**Richard CARTER, Plaintiff,**

v.

**THREE UNKNOWN POLICE OFFICERS OF the WILMINGTON POLICE DEPARTMENT, et al., Defendants.**

**Civ. A. No. 81–228 LON.**

United States District Court, D. Delaware.

Oct. 4, 1985.

Richard Carter, pro se plaintiff.

Roger A. Akin, of Sawyer & Akin, Wilmington, Del., for defendants Three Unknown Police Officers and City of Wilmington.

## OPINION

LONGOBARDI, District Judge.

Plaintiff Richard Carter brought this action under 42 U.S.C. § 1983 seeking declaratory and injunctive relief and monetary damages. The Defendants are the City of Wilmington, Delaware and three members of the Wilmington Police Department as well as an officer of the Delaware County, Pennsylvania, Investigation Division. Judge Latchum previously granted summary judgment for Defendants on Plaintiff's claims for declaratory and injunctive relief. Docket Item ("D.I.") 47. Currently before the Court are cross-motions for summary judgment filed by Carter and the Wilmington Defendants on Carter's claim for monetary damages.

## BACKGROUND

The police activities which led to Plaintiff's complaint were related to the investigation into the murder of Clarence Humphrey Womack. On February 17, 1981, Chester, Pennsylvania police found Womack's body in a van parked on a street in Chester. On February 18, 1981, Carter entered Levy's Pawn Shop in Wilmington, Delaware and attempted to sell forty-one gold rings. The manager suspected that the rings might have been stolen and he called the Wilmington police. Officers Martin P. Hageman and George J. Crowley, two of the Defendants in this action, responded to the manager's call. They informed Carter that they had come because the owner suspected the rings were stolen and they began to question Carter about his identity and reasons for being in Wilmington. Carter told the officers that he was from Pennsylvania[1] and that he had come to Wilmington to sell the rings because the price of gold was higher in Wilmington. The officers then asked Carter where he obtained the rings and he answered that he purchased some of them from customers at a fast food restaurant at which he was employed.

Officers Hageman and Crowley were not satisfied with Carter's answers and they informed him that he would be detained pursuant to 11 *Del.C.* § 1902. Section 1902 permits a police officer to "stop any person ... who he has reasonable ground to suspect is committing, has committed or is about to commit a crime...." If the person fails to identify himself or explain his actions to the satisfaction of the police officer, he may be further detained for up to two hours.

Carter was taken to Wilmington police headquarters where he was told his *Miranda* rights and informed that he was suspected of attempting to sell stolen goods. Carter had given Hageman and Crowley two pieces of identification, one of which was a bank card which showed an address in Chester. Detective James Kelly of the Wilmington Police Department, the third Wilmington Defendant in this action, called the Chester Police Department and was informed that Carter was wanted by the Chester police in connection with a homicide investigation. In response to Kelly's phone call, Detective Daniel Iacona[2] of the Chester Police Department and Detec-

---

1. The officers testified that Carter told them he was from Philadelphia. D.I. 134, p. 10. Carter claims he told the officers that he was from Chester. D.I. 136, p. 9.

2. Detective Iacona was originally named as a Defendant in this action but later settled with Carter and was dismissed from the case.

tive Randolph Martin[3] of Delaware County, Pennsylvania came to Wilmington police headquarters with Womack's widow and her brother. Mrs. Womack recognized the rings which Carter had attempted to sell as having been the property of her husband. Carter then told police that he had purchased the rings from Womack. He was arrested by the Wilmington police for possession of stolen property.

At the time of his arrest, Carter was staying at the Radisson Hotel in Wilmington. Carter told police that he had to check out of the hotel by one o'clock. He was then taken by Kelly and Martin to the Radisson to check out and pick up his belongings. Carter was again told his *Miranda* rights and informed that any additional evidence found in the room would be used against him. The parties disagree about whether Carter consented to the search of his hotel room. The Defendants claim that Carter told them he had nothing to hide and that they were free to search his hotel room. D.I. 134, p. 12. Carter says that he told the officers he had nothing to hide but he denies consenting to the search. Deposition of Richard Carter, D.I. 125, pp. 44–45.

Kelly and Martin then searched Carter's hotel room. They found a hypodermic syringe, possession of which is a violation of 16 *Del.C.* § 4757, and two small vials containing a light amber liquid. Here again, the parties differ as to what transpired. Kelly claims that he suspected that the vials contained drugs and that a field test of the vials indicated they contained methamphetamine, the possession of which is criminal under Delaware law. Formal laboratory tests later revealed that the vials did not contain any controlled substance. D.I. 134–A, p. A–45.

Carter's version of the events is somewhat different. He contends that after the hypodermic syringe was found the officers offered to throw it away if Carter agreed to go back to Chester voluntarily. Carter Deposition, D.I. 125, p. 46. When he refused, Carter asserts that the officers fraudulently claimed that the vials contained a controlled substance when they knew that the vials contained musk oil. Carter maintains that the Defendants brought the drug charges in bad faith to coerce him into going back to Chester.

Carter was charged by the Delaware authorities with possession of methamphetamine, possession of a hypodermic syringe and receipt of stolen property and he was held for twelve days at the Delaware Correctional Center before being released on bail. Carter was indicted on the hypodermic syringe and stolen property charges. D.I. 134–A, p. A–44. The methamphetamine charges were dropped when the laboratory tests revealed that the vials seized from Carter did not contain a controlled substance.

Subsequently, Carter was arrested in Pennsylvania and charged with the murder of Clarence Womack. The Delaware authorities entered a nolle prosequi on the Delaware charges because of Carter's arrest on far more serious charges in Pennsylvania. D.I. 134–A, p. A–46.

Following a preliminary hearing, Carter was held for trial in Pennsylvania on charges of murder, robbery, theft by receipt of stolen property and related charges. D.I. 134–A, p. A–12. Prior to trial, Carter moved to suppress all evidence arising out of his Delaware detention and arrest. The motion was denied by Judge Levy of the Pennsylvania Court of Common Pleas. *Commw. v. Carter*, No. 5904–81 (Ct. of C.P. of Delaware County, April 15, 1982).

At a jury trial, Carter was acquitted of murder and robbery but convicted of receipt of stolen property and was sentenced to jail. He then moved for reconsideration of his sentence claiming, *inter alia*, that the court erred in not suppressing the evidence obtained from his Delaware detention and arrest. Judge Levy denied the motion for reconsideration. *Commw. v. Carter*, No. 5904–81 (Ct. of C.P. of Delaware County, March 18, 1983).

3. Officer Martin was served as a Defendant in this action but has not responded in any way.

In his opinion Judge Levy considered the validity of Carter's arrest under both Delaware law and the United States Constitution. Judge Levy found that the officers had reasonable grounds to suspect that Carter was involved in criminal activity based on the statement by the pawn shop owner that the rings may have been stolen, the officers' observations that the rings were all new, Carter's inability to explain possession of so many rings and the conflict between Carter's statement that he lived in Philadelphia and the Chester address on his identification card. Judge Levy concluded that Carter's initial detention satisfied the requirements of 11 *Del.C.* § 1902 and was, therefore, valid under Delaware law.

Judge Levy then discussed Carter's contention that even if his initial detention was valid under section 1902, section 1902 was unconstitutional. He noted that the Supreme Court's decision in *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979), raised serious doubt about the constitutionality of statutes such as section 1902 which authorize detention based on suspicion not amounting to probable cause. However, Judge Levy found it unnecessary to rule on the constitutionality of section 1902 since he held that the police had probable cause to arrest Carter based on the factors enumerated above. Therefore, even if the initial detention of Carter is viewed as a full arrest, there was no constitutional violation. On appeal, the Pennsylvania Superior Court affirmed. *Commonwealth v. Carter*, Pa.Super., 479 A.2d 1095 (1984). The Pennsylvania Supreme Court denied Carter's petition for review.

In this action under 42 U.S.C. § 1983, Plaintiff claims that the Wilmington Defendants violated his constitutional rights by illegally detaining and arresting him, illegally searching his hotel room, fabricating a charge of illegal possession of a controlled substance and falsely imprisoning him for twelve days at the Delaware Correctional Center. The Court will consider the motions for summary judgment with regard to each of these claims asserted against the three Wilmington police officers. The Court will then consider separately the liability of the City of Wilmington for these alleged constitutional violations.

## DETENTION, ARREST AND IMPRISONMENT OF CARTER BY DELAWARE AUTHORITIES

Plaintiff attacks the legality of his detention and arrest by the Defendants on two grounds. First, he asserts that the Delaware statute which authorized his initial detention, 11 *Del.C.* § 1902, is unconstitutionally vague and also violates his fourth amendment rights. Second, he contends that the detention actually constituted an illegal arrest because it was without a warrant and was not supported by probable cause.

Defendants have moved for summary judgment responding that Plaintiff may not argue that his detention and arrest were unsupported by probable cause since that issue has already been litigated and decided against him by a Pennsylvania court. Defendants cite *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980), in support of their position that this Court must give preclusive effect to the State court decision that probable cause did exist to arrest Carter.

In *Allen*, plaintiff (McCurry), after being convicted of heroin and assault offenses in State court, brought a damages suit under 42 U.S.C. § 1983 against the police officers who had arrested him. McCurry asserted that the officers had conducted an illegal search and seizure in conjunction with his arrest. The Supreme Court held that collateral estoppel [4] does apply in section 1983

---

4. This Court adopts the formulations of collateral estoppel and res judicata as set forth by the Supreme Court in *Migra v. Warren City School Dist. Bd. of Educ.*, 104 S.Ct. 892, 894 n. 1 (1983). Collateral estoppel is issue preclusion and "refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated." *Id.; Restatement (Second) of Judgments* § 27 (1982). Res judicata, as the term has recently been applied by the Court, is "virtually synon-

**1258**

cases and that a prior State court decision that the search and seizure was valid would bar McCurry from reasserting the issue in federal court. *See, Migra v. Warren City School Dist. Bd. of Educ.,* 465 U.S. 75, 104 S.Ct. 892, 897, 79 L.Ed.2d 56 (1984). The explicit basis for issue preclusion is the Constitution's Full Faith and Credit Clause[5] as implemented by the Federal Full Faith and Credit Statute.[6]

The *Allen* court also provided a test against which questions of issue preclusion are to be judged by federal courts: "Congress has specifically required all federal courts to give preclusive effect to state court judgments *whenever the courts of the State from which the judgments emerged would do so....*" *Allen,* 449 U.S. at 96, 101 S.Ct. at 415 (emphasis added). *See, Migra,* 104 S.Ct. at 897. [*"Allen* therefore made clear that issues actually litigated in a state court proceeding are entitled to the same preclusive effect in a subsequent federal § 1983 suit as they enjoy in the courts of the State where the judgment was rendered."]

■ *Allen* does control this case. As a result, this Court must give preclusive effect to the Pennsylvania court probable cause determination if it is found that the decision would have such effect under Pennsylvania law.

The Pennsylvania Supreme Court has established that four conditions must be met in order to properly preclude relitigation of an issue in a subsequent action (collateral estoppel) under State law:

1) the issue decided in the prior adjudication was identical with the one presented in the later action, 2) there was a final judgment on the merits, 3) the party

against whom the plea is asserted was a party or in privity with a party to the prior adjudication, and 4) the party against whom it is asserted has had a full and fair opportunity to litigate the issue in question in a prior action.

*Safeguard Mutual Insurance Company v. Williams,* 463 Pa. 567, 345 A.2d 664, 668 (1975).

It appears evident that all four *Williams'* conditions are satisfied in the present case. *First,* the material issue in the prior adjudication and the present one are identical. In the prior adjudication, Pennsylvania Court of Common Pleas Judge Levy held that probable cause did exist to permit Carter's detention and arrest. *Commw. v. Carter,* No. 5904–81 at 7 (Ct. of C.P. of Delaware County, March 18, 1983). In the present case, Carter bases his section 1983 claim on his allegation that the Defendants lacked probable cause to arrest him. Plaintiff's Complaint, D.I. 2, p. 2. *Second,* there was a final judgment on the merits. In the initial criminal matter, the probable cause issue was decided in the denial of Carter's motion to suppress evidence based on his allegation of an illegal arrest. "[T]hat the parties were fully heard, that the court supported its decision with a reasoned opinion, that the decision was subject to appeal or was in fact reviewed on appeal, are factors supporting the conclusion that the decision is final for the purposes of preclusion." *Restatement (Second) of Judgments,* § 13, Comment g (1982); *see, United States ex rel Di Giangiemo v. Regan,* 528 F.2d 1262 (2d Cir. 1975), *cert. denied,* 426 U.S. 950, 96 S.Ct. 3172, 49 L.Ed.2d 1187 (1976) [where the court found an Order on a suppression motion to be a "final judgment" for pur-

---

ymous with 'claim preclusion.'" *Id.* Therefore, res judicata refers "to the preclusive effect of a judgment in foreclosing relitigation of matters that should have been raised in an earlier suit." *Id.*

**5.** "Full Faith and Credit shall be given in each State to the public Acts, Records, and Judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceed-

ings shall be proved, and the Effect thereof." U.S. Const., Art. IV, § 1.

**6.** "Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken." 28 U.S.C. § 1738 [excerpt of pertinent part].

poses of issue preclusion. *Id.* at 1265]. *Third,* the party against whom issue preclusion is sought is identical in both cases, that is, Carter. *Fourth,* Plaintiff did have a full and fair opportunity to litigate the issue of probable cause in the Pennsylvania courts. The issue was dealt with at three different levels of judicial scrutiny during the criminal proceeding in Pennsylvania. It was adversely decided against the Plaintiff at the pretrial motion to suppress, *Commw. v. Carter,* No. 5904–81 at 7–10 (Ct. of C.P. of Delaware County, April 15, 1982), at the post-trial objections, *Commw. v. Carter,* No. 5904–81 at 6 (Ct. of C.P. of Delaware County, March 18, 1983), and on appeal *Commonwealth v. Carter,* 479 A.2d 1095.

*Allen* did recognize, however, an exception to the issue preclusion based on state court rulings. In *England v. Medical Examiners,* 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964), a group of chiropractors brought an action in federal court challenging the constitutionality of the Louisiana Medical Practice Act. Since there was some question as to whether the Act actually applied to chiropractors, the federal court abstained to allow the state courts an opportunity to interpret it. In the proceeding before the state court, the chiropractors argued that the statute was unconstitutional and that the statute did not apply to them. They explicitly reserved the right to return to federal court if the state courts decided against them on the constitutional issue.

The Louisiana state courts held that the Act applied to chiropractors and that, as so applied, it did not violate the United States Constitution. The chiropractors then attempted to return to federal court but the district court dismissed the action on the grounds that the state courts had already ruled on the constitutional claim. The Supreme Court reversed holding that the district court should have considered the chiropractors' constitutional claim.

*Allen* interpreted *England* as applying only to a situation in which the plaintiff had originally sought a hearing in a federal court but had been unable to obtain a hearing because that court had decided to abstain. In such circumstances, "a plaintiff who properly reserved the federal issue by informing the state courts of his intention to return to federal court, if necessary, was not precluded from litigating the federal question in federal court." *Allen,* 449 U.S. at 101, n. 17, 101 S.Ct. at 418, n. 17.

In response to this Court's inquiry as to whether the *England* exception was applicable, Carter submitted the transcript of the suppression hearing before Judge Levy. That transcript contains no mention of the federal court proceeding in Delaware nor is there any indication that Plaintiff informed Judge Levy that he reserved the right to return to federal court if necessary. Thus, the *England* exception is inapplicable here.

Even if Plaintiff had reserved the right to return to federal court, this case is distinguishable from *England.* In this case, Judge Latchum abstained for a time to allow the *Delaware* courts to conclude their proceedings. This Court never abstained because of the Pennsylvania criminal proceedings which proceeded to their conclusion independently of this action. Also, in this case, the Court did not abstain in order to allow a state court to rule on an issue of state law but stayed the case to avoid disrupting the Delaware criminal proceeding. In contrast, in *England,* the district court abstained to allow the Louisiana state courts to resolve issues of state law. In such a case, "[a]bstention may serve only to postpone, rather than to abdicate jurisdiction." *Allen,* 449 U.S. at 101, n. 17, 101 S.Ct. at 418, n. 17. Here, however, there is no reason not to give the state court ruling collateral estoppel effect.

Carter's next argument to avoid the preclusive effect of the Pennsylvania court decision is that the Pennsylvania court lacked jurisdiction to rule on the constitutionality of a Delaware statute. Even if there were any merit to this contention, it would not help Carter because Judge Levy did not, in fact, rule on the constitutionality

of section 1902. Instead, he ruled that the police had probable cause to make a full arrest and thus had no need to rely on the "reasonable suspicion" standard of section 1902.

■■■ Finally, Carter contends that Judge Levy's ruling on probable cause was erroneous. Such a contention misconstrues the nature of the federal system. This Court does not have the authority to review the correctness of state court rulings on constitutional law. The Supreme Court has repeatedly reaffirmed that state court judges are as capable and as qualified as federal judges to decide constitutional issues. *Allen*, 449 U.S. at 105, 101 S.Ct. at 420; *Stone v. Powell*, 428 U.S. 465, 493–94, n. 35, 96 S.Ct. 3037, 3052, n. 35, 49 L.Ed.2d 1067 (1976). Further, under the principle of collateral estoppel, even an incorrect determination of probable cause would be binding on this court. *United States ex rel. Hickey v. Jeffes*, 571 F.2d 762 (3d Cir. 1978). Defendants' motion for summary judgment on Carter's claims arising out of his detention and arrest will, therefore, be granted.

Carter's claim that his twelve day detention in prison in Delaware was unconstitutional is based on his claim that his arrest was unconstitutional. Since the Court has concluded that Carter is collaterally estopped from challenging the validity of his arrest, he is also precluded from seeking damages for his subsequent imprisonment. Defendants' motion for summary judgment will also be granted with respect to Carter's claims arising out of his imprisonment in Delaware.

## SEARCH OF CARTER'S HOTEL ROOM

Carter contends that the Defendants violated the fourth amendment when they searched his hotel room at the Radisson. Defendants have moved for summary judgment on the grounds that Carter consented to a search of his room and that, even if he did not consent, a warrantless search could be justified as an inventory search.

■■ Defendants' contention that Carter consented to the search is contradicted by Carter who denies ever giving his consent. These opposing contentions create a disputed issue of fact which cannot be resolved on a summary judgment motion.

In support of their contention that a warrantless search of Carter's hotel room was justified, Defendants cite *United States v. Lipscomb*, 435 F.2d 795 (5th Cir.1970). In *Lipscomb*, the police took into custody two individuals, Robert Lipscomb and Charlene Deering, who were sharing a hotel room. At Deering's request, the police took the couple's personal belongings from the hotel room to the police station for safekeeping. There, the police inventoried the personal effects. The Fifth Circuit held that evidence discovered in the course of this inventory was admissible against Lipscomb. The court found that the police were not attempting to obtain additional evidence against the couple but were simply following standard police procedure for the safekeeping of their possessions. The Court also found that there was no evidence that the inventory was a pretext for a search for incriminating evidence. Accordingly, the warrantless search was upheld as reasonable.

■■ In this case, however, Defendants have not established that the search was solely for inventory purposes. In particular, Detective Kelly's testimony on this point at the suppression hearing before Judge Levy is ambiguous at best. Transcript, p. 59. Since there remain disputed factual issues, the motion for summary judgment on this claim must be denied.

## METHAMPHETAMINE CHARGES LODGED AGAINST CARTER

■■ Carter contends that the officers fabricated the drug charges against him in an attempt to coerce him to go back to Chester voluntarily. Carter has moved for summary judgment based on the undisputed fact that the vial seized from his room did not contain methamphetamine or any other controlled substance.

Defendants contend that they conducted a field test on the vial which indicated that it contained methamphetamine. They then brought the drug charges against Carter in the good faith and reasonable belief that they had found a controlled substance in his room. When more precise laboratory testing determined that no controlled substance was present, the charges were dropped. Under this version of events, there could be no violation of Carter's constitutional rights. Since disputed factual issues remain, Carter's motion for summary judgment on this claim must be denied.

### GOOD FAITH IMMUNITY

Defendants contend that even if some of their activities violated the constitution, they are entitled to the qualified good faith immunity applied to state officials who must exercise discretion in the performance of their duties. In *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), the Court held that such officials are immune from suit provided that their actions satisfy a test of "objective reasonableness." The test is whether their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.*

Carter's allegations that the officers invented the methamphetamine charge in an effort to force him to go back to Chester would clearly negate the good-faith immunity defense. A more difficult question arises with respect to the search of Carter's hotel room. Even if the officers strayed beyond the boundaries of an inventory search, they may be entitled to a good-faith immunity defense if they did not violate a clearly established constitutional right. Unfortunately, the record does not indicate what procedures the Wilmington Police Department follows when goods must be secured nor does it show whether the officers, in fact, prepared an inventory of the goods. Defendants' motion for summary judgment on this ground must be denied but may be renewed after development of a more ample record.

### LIABILITY OF THE CITY OF WILMINGTON

Carter has named the City of Wilmington as a Defendant in this action, apparently based on the activities of its employees, the Defendant police officers. It is well established that an employer cannot be held liable under section 1983 based on a theory of *respondeat superior. Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In order to maintain this action against the City, Carter must present evidence that the allegedly unconstitutional activities of the police officers were pursuant to a "policy statement, ordinance, regulation or decision officially adopted and promulgated by [the City's] officers." *Id.* at 690, 98 S.Ct. at 2036.

The City has moved for summary judgment on the ground that Carter has not presented any evidence that the officers' activities were connected in any way with official policy. Carter has not responded to this contention nor is there any evidence in the record that would support a cause of action against the City. The City of Wilmington's motion for summary judgment is, therefore, granted with respect to all claims.

### CONCLUSION

Plaintiff's motion for summary judgment is denied. The motion for summary judgment by the City of Wilmington is granted with respect to all claims. The motion for summary judgment by the Defendant Police Officers is granted with respect to Plaintiff's claims arising out of his detention, arrest and imprisonment and denied with respect to Plaintiff's claims arising out of the search of his hotel room and the methamphetamine charges filed against him.