letter of credit was called and the debt to Kanawha paid.

Moreover, the Restatement of Restitution provides support for Chemical's assertion that it be subrogated to UAB's rights as a secured creditor. Section 162 comment b, entitled "Circumstances giving rise to subrogation," states that a party, "under a duty to make payment" to the creditor and who "uses his property or his property is used in discharging the obligation of another or a lien upon another's property ... is entitled to reimbursement and ... to the remedy of subrogation to obtain reimbursement." *Restatement of Restitution* § 162 comment b (1937). Comment e of this section further provides:

> Where property of one person is used in discharging a lien upon the property of another, under such circumstances that he is entitled to subrogation, he can in equity enforce the rights and powers which the lien-holder had prior to the discharge of the lien....

*Id.* at § 162 comment e.

In this case, Chemical's payment of the debt, which was compelled under the confirmation arrangement, extinguished the debtor's (and UAB's) obligation to pay the debt to Kanawha, and thus rendered the first deed of trust unenforceable by UAB. We believe that both logic and equity mandate Chemical's enjoyment of the secured status that UAB, as lienholder, had under the first deed of trust.[4]

Of course, Chemical could have better protected itself by taking an assignment of UAB's deed of trust upon its confirmation. However, for the foregoing reasons, we hold that such a failure should not preclude invocation of the equitable subrogation doctrine in the present case.

In sum, we believe that the thorough, well-reasoned opinion of the bankruptcy court correctly resolved the present dispute. Therefore, we vacate the judgment of the district court and reinstate the judgment of the bankruptcy court.

Melvin **WICKER**, Plaintiff-Appellant,

v.

**BOARD OF EDUCATION OF KNOTT COUNTY, KENTUCKY, et al., Defendants-Appellees.**

No. 86–5220.

United States Court of Appeals, Sixth Circuit.

Cause Argued Jan. 23, 1987.

Decided Aug. 14, 1987.

---

Daniel L. Hall, Hazard, Ky., for plaintiff-appellant.

Alva Hollon, Jr., argued, Hollon, Hollon and Hollon, Hazard, Ky., Arthur L. Brooks, Lexington, Ky., for defendants-appellees.

Before ENGEL and BOGGS, Circuit Judges, and HILLMAN, District Judge.[*]

ENGEL, Circuit Judge.

In *England v. Louisiana Board of Medical Examiners*, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964), the Supreme Court provided a means whereby a federal court plaintiff could preserve his right to litigate federal issues in federal court even though he had been required by *Pullman* abstention first to present his state issues to the state courts. *Railroad Comm'n v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). The plaintiff in *England* was obliged to repair to state court after the federal court abstained in order to let the state court decide those state law issues whose resolution might be dispositive of the entire litigation, thereby avoiding unnecessary confrontation between state and federal interests. The Supreme Court held that the plaintiff was not bound to forgo his federal forum but could, by notifying the parties and the state court that he was reserving his federal issues, limit the state court's determination to state issues even though it might otherwise have had concurrent jurisdiction. *England* also held, however, that when a federal court

---

[*] Honorable Douglas W. Hillman, Chief Judge, United States District Court for the Western District of Michigan, sitting by designation.

abstains and the plaintiff files a reservation in state court, that plaintiff can lose the federal forum if, inconsistent with his reservation, he thereafter fully presents federal issues to the state court.

The first issue presented in this appeal, not precisely addressed in *England*, is whether a federal court plaintiff, who brings his state law issues to state court prior to federal abstention, can still reserve his federal issues and return later to federal court. The second issue addressed is the preclusive effect to be given to the state court decisions in the present case, assuming the *England* reservation preserved plaintiff's right to return to federal court.

### I.

Appellant Melvin Wicker was appointed to a four-year term as Superintendent of Schools and Secretary of the Board of Education for Knott County, Kentucky, beginning July 1, 1980. The incumbent superintendent, Simeon Fields, resigned on May 30 and Wicker assumed office a month early. The school district then had financial problems at least partially caused by overstaffing. Wicker asserted in the state proceedings that he could not resolve the overstaffing problem because superintendent Fields had failed to send nonrenewal notices by a statutory deadline of April 30, 1980.

The record indicates that Wicker operated in an environment of considerable political controversy. A few months after taking office, Wicker had a disagreement with R.B. Singleton, the high school principal and an unsuccessful candidate for Wicker's position. That disagreement resulted in Singleton's termination and subsequent lawsuit against Wicker and the Board. Dissatisfied teachers and unsuccessful applicants for school staff positions filed other lawsuits.

This political unrest coincided with the reelection campaigns of three Board members. The three successful candidates, whom Wicker had not supported, took office in January 1981 and constituted a new Board majority. The Board filed charges against Wicker on February 17, 1981, and conducted hearings on the charges during March and April of 1981. It found that twelve of the charges against Wicker were true and it subsequently fired him.

Wicker filed legal actions first in federal district court and thereafter in Knott County Kentucky Circuit Court. Wicker alleged in his federal suit that defendant Board members and their attorney had infringed upon his constitutional rights in violation of 42 U.S.C. § 1983. Specifically, Wicker charged that (1) he was denied procedural and substantive due process because he was removed without a fair hearing and without legal cause, (2) the removal deprived him of first amendment rights because it was in reprisal for protected political activity, (3) the defendants conspired to remove him because of his participation in other lawsuits, and (4) Ky.Rev.Stat. § 160.-350 (governing removal of school superintendents)[1] is unconstitutional because it does not provide a fair hearing prior to discharge. After Wicker filed in state court but before that court had taken any action, the federal court abstained.[2]

---

**1.** Section 160.350 of the Kentucky Revised Statutes covers the appointment, term, salary, qualifications, and removal of a school superintendent. Concerning removal, it states:

> A superintendent of schools may be removed for cause by a vote of four-fifths (⅘) of the membership of a board of education. Written notice setting out the charges for removal shall be spread on the minutes of the board and given the superintendent fifteen (15) days before action is taken on his removal.

The Kentucky Supreme Court has defined "cause" as "a cause relating to and affecting the administration of the [public] office and ... restricted to something of a substantial nature

directly affecting the rights and interests of the public." *Smith v. Board of Educ. of Ludlow, Kentucky,* 264 Ky. 150, 94 S.W.2d 321, 325 (1936).

**2.** The federal district judge before whom this case was initially brought never stated his reasons for the abstention order. We assume that the order was entered based on *Pullman* principles in which state resolution of statutory claims in Wicker's favor might have been dispositive of the entire litigation. The parties also treat the abstention order as if it were entered under *Pullman.*

Promptly following the abstention order, Wicker filed in Knott County Circuit Court a reservation of federal issues: "The plaintiff intends, to return to the federal court for disposition of these issues, and he does not submit them for litigation in the state court." Wicker specifically listed the issues reserved, including his substantive and procedural due process claims, his first amendment claims, and his claim that Ky. Rev.Stat. § 160.350 was unconstitutional.

Upon Wicker's return, the federal court concluded that Wicker was barred by lack of standing from raising his claim that Ky.Rev.Stat. § 160.350 was unconstitutional. Wicker does not appeal that determination. The court also found that Wicker's remaining claims were precluded by the state court decisions. Wicker now seeks reversal of the district court's order granting summary judgment to defendants on those claims held barred by the previous state decisions.

## II.

■ As earlier observed, *England* acknowledged the general validity of preclusion principles and held:

if a party freely and without reservation submits his federal claims for decision by the state courts, litigates them there, and has them decided there, then ... he has elected to forgo his right to return to the District Court.

*Id.* at 419, 84 S.Ct. at 467. However, a party may forestall a conclusion that he elected not to return to federal court by filing in state court a reservation to the disposition of the entire case by the state courts. Such a reservation tells the state courts that he is exposing his federal claims there only so that the state court can construe state issues "in light of" the federal claims as required by *Government Employees v. Windsor*, 353 U.S. 364, 77 S.Ct. 838, 1 L.Ed.2d 894 (1957). The *England* Court emphasized that an explicit reservation is not vital to preserving the right to return to federal court:

[T]he litigant is in no event to be denied his right to return to the District Court unless it clearly appears that he volun-

tarily did more than *Windsor* required and fully litigated his federal claims in the state courts. When the reservation has been made ... his right to return will in all events be preserved.

*England*, 375 U.S. at 421–22, 84 S.Ct. at 467.

According to his pleadings at least, Wicker carefully followed this procedure, filing an express reservation of issues in Knott County Circuit Court and limiting his state suit to issues of state law. The parties do not dispute that the federal court abstained under *Pullman* or that Wicker promptly filed a reservation of his federal claims. However, defendants argue that Wicker's reservation did not preserve his right to return to district court.

*England* does not guarantee an absolute right to return to federal court. By recognizing that a party can forgo that right by freely and unreservedly litigating reserved claims in state court, *England* preserves a party's right to choose an appropriate forum while at the same time giving deference to a state court decision on an issue that was fully and fairly litigated. This procedure comports with *Pullman*. *Pullman* abstention requires a plaintiff to proceed to state court on those issues whose resolution may make unnecessary further action in federal court. The abstention procedure accords "appropriate deference to the respective competence of the state and federal court systems," *England*, 375 U.S. at 415, 84 S.Ct. at 464, and avoids needless confrontation between state and federal courts. The reservation outlined in *England* supports the same principles of comity and federalism underlying abstention doctrine. That a party may anticipate a federal abstention order by filing suit in state court in our opinion offends neither the principles underlying abstention nor the procedures laid out in *England*.

Defendants argue that Wicker should be precluded from returning to federal court because he filed voluntarily in state court, or conversely, that *England* should apply only where a party has been forced into state court. We do not agree with these arguments or with the cases cited in sup-

port of them. See, *e.g., Roy v. Jones*, 484 F.2d 96, 100–01 (3d Cir.1973) (limited by *New Jersey Educ. Ass'n v. Burke*, 579 F.2d 764, 774 n. 52 (3d Cir.1978)), in which the Third Circuit restricted *England* to cases where a litigant was sent to state courts against his will; and *Henry v. First National Bank of Clarksdale*, 595 F.2d 291, 298 n. 1 (5th Cir.1979).

The district judge here apparently considered the fact that Wicker voluntarily filed in state court to be an important if not dispositive factor in deciding whether to recognize Wicker's reservation. We are uncertain whether the judge's ruling was influenced by his view that Wicker voluntarily filed in state court before the federal court abstained or by his perception that Wicker did not oppose the abstention order when it was later made. Although Wicker did not file a written response to defendants' motion for abstention, he did orally object to abstention at a pretrial conference held before the previously assigned judge on February 5, 1982. However, even if Wicker had not opposed the abstention order, we would hesitate on that account to bar Wicker's return to federal court.

We realize that a party who is allowed to proceed in both federal and state forums may enjoy two bites of the apple. However, two safeguards exist. First, to the extent that a plaintiff does more than protect his rights under state law by fully litigating federal claims, *England* bars relitigation of those claims. Second, if a plaintiff attempts to split a cause of action between federal and state courts where abstention is inappropriate, the federal court may accord full preclusive effect to a prior state decision. *See, e.g., Tarpley v. Salerno*, 803 F.2d 57, 60 (2d Cir.1986); *Southern Jam, Inc. v. Robinson*, 675 F.2d 94, 97 n. 5 (5th Cir.1982); *Switlik v. Hardwicke Co., Inc.*, 651 F.2d 852, 859 (3d Cir. 1981). Further, cases decided since *England* uniformly have not allowed a plaintiff

to return to federal court if he does not reasonably inform the state court of outstanding federal issues. *E.g., Holmes v. Jones*, 738 F.2d 711, 714 (5th Cir.1984); *Lurie v. State of California*, 633 F.2d 786, 788 (9th Cir.1980); *Lovely v. Laliberte*, 498 F.2d 1261, 1263 (1st Cir.1974); *Carter v. Three Unknown Police Officers*, 619 F.Supp. 1253, 1259 (D.C.Del.1985).

Determining what was brought in state court may be difficult: "the determination of which issues or claims were brought before the state court may on occasion necessitate subtle inquiries. In such cases, the principles of *England* would bid us focus attention on the intent of the party raising claims in state court." *New Jersey Educ. Ass'n v. Burke*, 579 F.2d 764, 774 n. 52 (3d Cir.1978). Here, we accept Wicker's conduct in the state proceedings as the most reliable indication of his intent.

The relief sought by Wicker in Knott County Circuit Court was an injunction against his removal, a declaration that defendants' actions were void for being arbitrary and capricious, and costs. In his trial memorandum Wicker also requested reinstatement. He asserted that the charges against him did not constitute "legal cause" for dismissal and that in any event he was not guilty of the charges. He also asserted that the Board of Education was biased and prejudged his case, and that defendants violated Ky.Rev.Stat. § 161.162 by discriminating against him on political grounds. Finally, he charged that defendants' removal of him did not comply with Ky.Rev.Stat. § 161.790 procedurally or substantively. Thus Wicker did not directly raise any of his reserved issues in state court, but limited the state action to the interpretation and application of Kentucky statutes. At the outset at least, Wicker apparently intended to resolve no more than state statutory claims.[3]

In asserting that Wicker's reservation was invalid because he sought a state reso-

---

**3.** Wicker's attorney asserted at two pretrial conferences that he filed in state court to preserve Wicker's rights under the Kentucky Teacher Tenure Act, Ky.Rev.Stat. § 161.790. We discount this argument because Wicker's initial complaint did not raise the Teacher Tenure Act.

Also, *Floyd v. Board of Educ. of Greenup County*, 598 S.W.2d 460 (Ky.App.1979), held that a school superintendent is not afforded the protections of the Act, and Wicker later admitted that his appeal under that act was moot by the time of trial.

lution before the actual abstention order, defendants liken these facts to those in *Oler v. Trustees of California State University and Colleges,* 80 F.R.D. 319, 321 (N.D.Cal.1978): *"England* does not control where plaintiff himself initially seeks relief in the state court, particularly where ... plaintiff unreservedly raises his federal constitutional claims in the state court."

To the extent that *Oler* forbids relitigation of issues that were raised and fully litigated without reservation in the state courts, we agree with its conclusion. However, to the extent that *Oler* may invalidate an *England* reservation on the sole basis that plaintiff first filed in state court, that question is not before this court.[4] Unlike the plaintiff in *Oler,* Wicker did not initially seek relief in state court. This is not a situation where a party is properly barred from further litigation after first filing a reservation in state court and then proceeding to federal court after a state court decision on the merits. *See, e.g., Fuller Co. v. Ramon I. Gil, Inc.,* 782 F.2d 306 (1st Cir.1986); *Spence v. Latting,* 512 F.2d 93 (10th Cir.1975). See also *Deane Hill Country Club, Inc. v. City of Knoxville,* 379 F.2d 321, 326 (6th Cir.1967), in which this court rejected an argument that plaintiff was required to bring all his claims in state court because he would have been barred from federal court by abstention. Further, we again emphasize that the major inquiry should be what actually was litigated and decided in the state courts. *E.g., Lurie v. State of California,* 633 F.2d 786, 789 (9th Cir.1980); *New Jersey Educ. Ass'n v. Burke,* 579 F.2d 764, 773–74 (3d Cir.1978).

Therefore, we conclude that Wicker, by filing an express reservation of federal issues before the Knott County Circuit Court and by limiting his state action to issues of Kentucky law, initially preserved his right to return to federal district court for adjudication of his reserved claims following that court's order of abstention.

### III.

Our recognition of Wicker's reservation of issues before the Kentucky courts still requires us to decide the preclusive effect of the state decisions. Chief Judge Aldisert, concurring in *Roy v. Jones,* 484 F.2d 96, 102 (3d Cir.1977), stated:

An *England*-type abstention envisions two stages. Where the cause is filed in federal court before a state court decision, a *Pullman*-type abstention comes into being, the federal court staying its hand until the state court acts. If, after the state proceedings terminate, the plaintiff returns, the federal court must make a factual determination. It must decide whether the federal questions were presented to the state court. If they were, and were not reserved, then, on the theory of *res judicata,* the court may properly dismiss the federal action. It is this second stage which gives the label *"England*-type" to this category of abstention....

This analysis refers to the potential claim preclusive effect of a state decision. Claim preclusion bars a subsequent claim that could have been brought in the first action; issue preclusion, in contrast, bars only the relitigation of issues previously litigated.[5] If a plaintiff takes his federal claims to the state courts and fully litigates those claims

---

4. Courts disagree whether an *England* reservation is valid if the plaintiff first files in state court. *Compare Gresham Park Community Organization v. Howell,* 652 F.2d 1227, 1243 n. 48 (5th Cir.1981) with *Tovar v. Billmeyer,* 609 F.2d 1291, 1293–94 (9th Cir.1980). *See also Kovats v. Rutgers,* 749 F.2d 1041, 1048 (3d Cir.1984); *Kurek v. Pleasure Driveway & Park Dist.,* 557 F.2d 580, 594–95 (7th Cir.1977), *vacated on other grounds,* 435 U.S. 992, 98 S.Ct. 1642, 56 L.Ed.2d 81 (1978), *on remand,* 583 F.2d 378 (1978); *New Jersey Educ. Ass'n v. Burke,* 579 F.2d 764, 774 n. 52 (3d Cir.1978).

5. Claim preclusion and issue preclusion are roughly synonymous respectively with res judicata and collateral estoppel. However, because the latter terms have not been used consistently, we avoid confusion by referring to either the claim preclusive or issue preclusive effects of the state decisions. *See Migra v. Warren City School Dist. Bd. of Educ.,* 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 894 n. 1, 79 L.Ed.2d 56 (1984).

or adds other federal claims to his state suit, he has removed himself from the protection of *England* and is subject to claim preclusion. As previously noted in our discussion of Wicker's pleadings in state court, Wicker there limited himself to issues of state law. Thus he is not barred by claim preclusion from now litigating his federal claims in federal court.

However, *England* acknowledged issue preclusion by its holding that, despite a reservation, a party is precluded from relitigating an issue if he "fully and unreservedly" litigated it in state court. Defendants assert that Wicker fully litigated two questions in the Kentucky courts: the existence of legal cause for the discharge and political bias on the part of Board members. We consider each issue separately.

From our review of the state court record, we conclude that Wicker fully litigated the first question of legal cause under Kentucky law for his discharge and that he received an adverse decision thereon. The Knott County Circuit Court sustained the Board's decision to discharge Wicker on the ground that Wicker had not properly operated the business affairs of the school system by keeping expenditures within income. The Kentucky Court of Appeals affirmed, *Wicker v. Board of Educ. of Knott County*, No. 84–CA–1192–MR (Ky.Ct.App. April 19, 1985):

> Of the numerous charges leveled at Wicker by the school board, the trial court chose to uphold his removal on the basis that Wicker had failed to provide a sound budget for the school system. Although the voluminous record filed in this case contains contradictory evidence on this point, there is ample testimony supporting the finding that during Wicker's term as superintendent the financial condition of the Knott school system worsened and, despite offers of help from the state department of education, he did little or nothing to remedy the situation. We are convinced that the discharge of a superintendent on this basis is clearly removal "for cause" as contemplated by KRS 160.350 and it was the prerogative, if not the duty, of the board

under the statute to act. We find no basis for disturbing their decision or that of the circuit court upholding it.

Considering the alleged deprivation by state action of a property interest without due process, it must be remembered that such property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Cleveland Board of Educ. v. Loudermill*, 470 U.S. 538, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); *Averitt v. Cloon*, 796 F.2d 195 (6th Cir.1986) (both quoting *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972)).

■ Even though Wicker reserved his federal issues in state court, there still can be issue preclusive effect accorded to both state court findings of law and findings of fact, which were not only necessarily involved in the state law conclusion but were in fact decided by the state court under circumstances in which the parties received a full and fair opportunity to litigate the issue. The Third Circuit approved this argument in *Kovats v. Rutgers*, 749 F.2d 1041, 1046 (3d Cir.1984):

> Appellants assert that the Supreme Court's treatment of *England* in its preclusion cases requires that no preclusive effect of any kind be given to any state court decision on return to federal court following abstention. While the Court clearly has reaffirmed the validity of *England*'s reservation procedure, we do not read its opinions to mean that in an *England* reservation case no preclusive effect may ever be given to a state court determination. A state court's resolution of the state law question that required *Pullman* abstention clearly must be given some preclusive effect; otherwise abstention would be a meaningless procedure.

Analyzing the facts here under this rule, we conclude that the Kentucky courts necessarily found first, that Wicker was guilty of inadequate handling of the Knott County school system's financial affairs; second, that that was at least one reason for

his discharge as superintendent; and finally, that under Kentucky law it was a legally sufficient reason or cause for terminating him. Wicker thus may not reargue in federal court his claim that he was discharged without legal cause. The decisions of the Kentucky courts foreclose that claim because they found the failure to keep within an approved budget a sufficient cause and implicitly an actual cause of his discharge.

█ What the Kentucky courts could have decided, but in our judgment did not decide, was whether the inadequate handling of school finances was the sole cause of Wicker's discharge. Further, the Kentucky courts failed to determine whether the Board's decision was affected by political considerations and, if so, whether those considerations were improper. To the extent, therefore, that these issues are important to Wicker's federal claims, we hold that the Kentucky courts' decisions had no preclusive effect upon them and that Wicker is at liberty to litigate those questions in connection with his federal claims.

Therefore, the state court decisions do not preclude inquiry under federal law whether Wicker was placed in a worse position because of federally protected activity. *Mt. Healthy City Bd. of Educ. v. Doyle*, 429 U.S. 274, 285–86, 97 S.Ct. 568, 575–76, 50 L.Ed.2d 471 (1977). Under *Mt. Healthy* a plaintiff must show that he engaged in constitutionally protected activity and that the activity was a substantial or motivating factor behind the discharge. The burden then shifts to defendants to show that discharge would have occurred despite any political bias. *See also Givhan v. Western Line Consol. School Dist.*, 439 U.S. 410, 416, 99 S.Ct. 693, 697, 58 L.Ed.2d 619 (1979), and *Stern v. Shouldice*, 706 F.2d 742 (6th Cir.1983). We must accept the Kentucky Court of Appeals' view that it was the Board's prerogative rather than its duty to discharge Wicker. The state court finding of legal cause thus does not resolve Wicker's federal discrimination claim under *Mt. Healthy*.[6]

Concerning the question of discrimination on political grounds, we assume for purposes of this opinion that Wicker fully litigated that issue in the Kentucky courts. Wicker asked a number of witnesses about political alignment between parties to the litigation and other school personnel, and he questioned witnesses in detail about statements that he or others would be fired if certain candidates were elected to the Board.

Even though it is clear that Wicker at least raised the question of political bias in his state suit, it is equally clear that the state courts never reached that issue. Not only did the Kentucky courts fail to make any factual determination on the question of political bias, but the transcript of the state court proceedings suggests that the state trial court judge expressly disregarded the issue:

> Court: Just a minute. The only thing that's going to be considered in this trial is whether or not Melvin Wicker as Superintendent of Schools was derelict in his duties to such an extent that he should be removed from office. Now what Simeon Fields speculated or what some other fellow speculated or talked to someone in the election isn't going to have a thing in the world to do with it in my judgment. This case or the decision of this Court won't be made by newspaper articles and speculation. I'll base my decision upon what I think the law is coupled with the evidence....
>
> Hall: ... The proposition that we're introducing this evidence to prove is not as to the merit of the charges but that there was an ulterior motive.

---

**6.** Defendants argue that *Kendall v. Board of Educ. of Memphis City*, 627 F.2d 1 (6th Cir. 1980), precludes Wicker's due process claims. *Kendall* found that the defendant Board could meet its burden concerning the denial of procedural due process by showing that its charges against plaintiff were true and that it would have discharged him regardless of the procedure provided. We agree with Wicker's argument here that the truth of the charge upon which his termination was upheld is not as important as the reason for which he was fired under *Mt. Healthy*. The truth of the charges raised is only important if defendants can show that Wicker would have been discharged therefor despite any protected activity.

Court: Well there might be. But we've got our law on books and the Board hires the Superintendent and the Board has the right to remove the Superintendent if he has to such an extent violated the law that he should be removed within the law. Now that's all we've got here. But what people speculate isn't going to be concerned at all. The Board may have been biased, I don't know, but that has nothing to do with it. They had a right to remove him if they considered the evidence and thought that Wicker should be removed. The thing that we're going to get at here is what I'll answer and what some higher court will answer as to whether or not that the Board acted within the law when they removed Wicker.

Transcript of Knott County Circuit Court trial pp. 151–53.

As previously noted, *England* acknowledged that determination of an issue fully and fairly litigated bars further litigation of that issue. However, it is also true that the *England* court found the possibility of direct review in the Supreme Court of a post-abstention determination by the state courts "an inadequate substitute for the initial District Court determination ... to which the litigant is entitled in the federal courts." 375 U.S. at 416, 84 S.Ct. at 465. This was especially true as to issues of fact, *id.:*

> Limiting the litigant to review here would deny him the benefit of a federal trial court's role in constructing a record and making fact findings. How the facts are found will often dictate the decision of federal claims.

To the extent the state decisions may be relevant to his federal claim, we repeat our holding that Wicker is not barred from relitigating the political discrimination issue. We so hold because the Kentucky courts refused to decide that issue. *England*'s emphasis on a plaintiff's right to return to federal court to resolve disputed issues of fact underlying his federal claims following abstention and following a state court ruling on those issues makes it even more important to allow Wicker that oppor-

tunity when the state court is silent. Any other result would negate the effect of an *England* reservation. The mere opportunity to raise first amendment claims in state court is not sufficient to permit dismissal of those claims by the federal court after an *England* reservation. *Promovision Int'l Films, Ltd. v. Trapani,* 744 F.2d 1063, 1065 (4th Cir.1984).

The Supreme Court has held that the same preclusion principles govern a section 1983 action as any other kind of action. *Allen v. McCurry,* 449 U.S. 90, 103–04, 101 S.Ct. 411, 419–20, 66 L.Ed.2d 308 (1980); *Migra v. Warren City School Dist. Bd. of Educ.,* 465 U.S. 75, 85, 104 S.Ct. 892, 898, 79 L.Ed.2d 56 (1984). The preclusive effect of a prior state decision is normally determined by state law. *Kremer v. Chemical Construction Co.,* 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982). We cannot give greater preclusive effect to the state decisions than would the Kentucky courts. *Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 384, 105 S.Ct. 1327, 1334, 84 L.Ed.2d 274 (1985) (citing *Migra,* 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984)).

Directing our attention therefore to Kentucky law, we find that Kentucky courts accord preclusive effect only to issues that actually or necessarily determined the relevant claim. In *Sedley v. City of West Buechel,* 461 S.W.2d 556 (Ky.1970), the Kentucky Supreme Court stated:

> The general rule is that a judgment in a former action operates as an estoppel only as to matters which were necessarily involved and determined in the former action, and is not conclusive as to matters which were immaterial or unessential to the determination of the prior action or which were not necessary to uphold the judgment. The rule has been applied although such matters were presented in the former action and actually determined therein, and although they may affect the ultimate rights of the parties.

*Id.* at 558. *See also Commonwealth v. Hillebrand,* 536 S.W.2d 451, 453–54 (Ky. 1976); *Whittenberg Eng. & Const. Co. v.*

*Liberty Mut. Ins. Co.,* 390 S.W.2d 877, 883 (Ky.1965); *Penco, Inc. v. Detrex Chemical Ind.,* 672 S.W.2d 948, 950 (Ky.App.1984) (citing *Cream Top Creamery v. Dean Milk Co.,* 383 F.2d 358 (6th Cir.1967)); and *George v. United Kentucky Bank, Inc.,* 753 F.2d 50, 53 (6th Cir.1985) (interpreting Kentucky law). Applying that standard, it is clear that the state courts here neither actually nor necessarily determined whether the Board was motivated by political bias.

As reflected in the state court opinions, neither court mentioned political discrimination. Defendants, however, would have us read from the state court's silence a conclusion that Board members were not biased. This we must not do under Kentucky law.

First, the political discrimination inquiry under Ky.Rev.Stat. § 161.162 is neither explicitly nor logically part of a determination of legal cause under Ky.Rev.Stat. § 160.-350. See *Banks v. Board of Educ. of Letcher County,* 648 S.W.2d 542 (Ky.App. 1983), in which the Kentucky Court of Appeals declined to reach a claim of arbitrary action because it concluded the school district had not afforded plaintiff sufficient notice of the reasons for his demotion, and *Banks v. Burkich,* 788 F.2d 1161 (6th Cir. 1986), which discussed the federal remedy available to the same plaintiff under § 1983. A court reviewing a Board's decision to discharge a superintendent will not choose between conflicting testimony or inquire into motives. *Bell v. Board of Educ. of McCreary County,* 450 S.W.2d 229, 233 (Ky.1970); *Hoskins v. Keen,* 350 S.W.2d 467, 469 (Ky.1961).

Second, language from *Calhoun v. Cassady,* 534 S.W.2d 806, 808 (Ky.1976), implies that a court must expressly state any conclusion of discrimination:

> If the primary reason for making the transfers as found by the trial court was to punish the teachers and administrators for their political activities, then such action was arbitrary and void. Simply because the superintendent could have been otherwise motivated by some proper purpose does not mean that these other purposes played a real part in his decision.

Third, the lenient standard of proof under § 161.162 suggests that the state trial judge here did not consider the issue. Wicker presented quite a bit of evidence in the state court concerning political bias, and under Kentucky law a "mere inference" of arbitrariness is sufficient to void an adverse employment decision. *Harlan County Bd. of Educ. v. Stagnolia,* 555 S.W.2d 828 (Ky.App.1977). If a "mere inference" is enough, it is hard to believe that the state trial court not only reached a negative conclusion concerning Wicker's claim of bias, but that it did so and then ignored that conclusion in its opinion.

Finally, the state court finding of legal cause does not answer the *Mt. Healthy* inquiry whether Wicker would have been discharged despite any political bias. Preclusion rules are not as strict regarding questions of law as questions of fact, *Ward v. Southern Bell Telephone & Telegraph Co.,* 436 S.W.2d 794, 796 (Ky.1968), and different standards of proof may render issue preclusion inapplicable, *Doherty v. American Motors Corp.,* 728 F.2d 334, 337–38 (6th Cir.1984).

We therefore conclude that Wicker is not precluded from relitigating the factual question whether the Board was biased on political grounds in deciding to discharge him.

## CONCLUSION

This appeal presents novel questions heretofore unaddressed by this court and only foreshadowed by *England v. Louisiana Bd. of Medical Examiners,* 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964). We conclude that a plaintiff who initially files in federal court then in state court, and thereafter faces an abstention order by the federal court, may nonetheless reserve his right to return to federal court for adjudication of his federal claims. To do so, however, he must file a reservation of issues with the state court and limit his state court action to questions of state law. We grant preclusive effect to the state court decision on the question of state law

452

for which the federal district court abstained provided that the plaintiff had a full opportunity to litigate that question. We do not recognize issue preclusion with regard to any issue not actually determined by the state courts.

We believe that our disposition best supports the rationale underlying preclusion—judicial economy and deference to previous decisions—while at the same time giving effect to *England* by preserving Wicker's initial choice of a federal forum to determine his federal claims. We also note that the result reached is consistent with our decision in *Polk v. Yellow Freight System, Inc.,* 801 F.2d 190, 193–95 (6th Cir.1986), and *Cooper v. City of North Olmstead,* 795 F.2d 1265 (6th Cir.1986), which found respectively that a retaliatory discharge claim and discrimination claim were not barred by previous state proceedings not directly determinative of those issues.

We therefore REVERSE and REMAND to the district court for further proceedings consistent with this opinion.