**Robert BARNES (86–6261) and Joe Thompson (87–5776), Plaintiffs-Appellants,**

**v.**

**Charles McDOWELL, Ed Fossett, and Sam Serraglio, Defendants-Appellees.**

Nos. 86–6261, 87–5776.

United States Court of Appeals, Sixth Circuit.

Argued March 15, 1988.

Decided June 7, 1988.

Rehearing Denied in No. 86–6261 Aug. 4, 1988.

Philip C. Kimball, Louisville, Ky., for plaintiffs-appellants.

David Armstrong, Atty. Gen., Nathan Goldman (argued), Sue G. Simon, Dept. for the Blind, Frankfort, Ky., for defendants-appellees.

Before MILBURN and BOGGS, Circuit Judges; and ALDRICH, District Judge.[*]

BOGGS, Circuit Judge.

Robert Barnes and Joe Thompson appeal the district court's decisions granting summary judgment in favor of defendants in their actions under 42 U.S.C. § 1983, 661 F.Supp. 498 (1987) and 647 F.Supp. 1307 (1986). Barnes and Thompson claim they were discharged in retaliation for having exercised their right to free speech. Upon review of the parties' briefs and the records, we conclude that the district court correctly awarded summary judgment in favor of defendants on Thompson's claim. However, the lower court erred in granting summary judgment in favor of defendants with respect to Barnes's claim.

Accordingly, we affirm the district court's decision in Thompson's appeal (No. 87–5776). We reverse the district court's decision in Barnes's appeal (No. 86–6261), and remand that case for further consideration of Barnes's section 1983 claim.

I

At the time he was discharged, Barnes was Director of the Business Enterprises Program of the Bureau for the Blind (the Bureau), a Kentucky agency within the state's Education and Humanities Cabinet.

---

[*] The Honorable Ann Aldrich, District Judge of the United States District Court for the Northern District of Ohio, sitting by designation.

The Business Enterprises Program assists blind Kentucky residents with the operation of vending machine stands at offices and businesses throughout Kentucky. At the time he was discharged, Thompson was Training Officer and Supervisor of Repairs for the Bureau's Business Enterprises Program. His position made him responsible for purchasing supplies for the machines and for supervising repairs of the machines.

On March 18, 1982, defendant-appellee Charles McDowell, acting Director of the Bureau and the immediate superior of Barnes and Thompson, notified them in separate letters that they were suspended for thirty working days while the Bureau investigated a report that the men had sexually harassed Thompson's secretary, a blind female named Libby Williams. Defendant-appellee Ed Fossett, acting attorney for the Education and Humanities Cabinet, and defendant-appellee Sam Serraglio, acting Finance and Personnel Officer of the Bureau, conducted the investigation.

On April 30, 1982, McDowell notified Barnes and Thompson, again in separate letters, that they were discharged for having sexually harassed Libby Williams. Barnes also was accused of having harassed two other females associated with the Bureau. In addition to the sexual harassment charges, both men were accused of various deficiencies in their work performance, including allegations that the two had been inebriated while on the job and when socializing with vendor operators in the field. The letter stated that the men had ten working days to reply to McDowell about the charges.

On May 21, 1982, Barnes and Thompson appeared with counsel before McDowell.

Fossett and Serraglio also were present. According to affidavits from Fossett and Serraglio, "Mr. McDowell confronted Mr. Barnes and Mr. Thompson with the charges against them and gave them an opportunity to refute, explain and otherwise address the charges." Apparently, Barnes's and Thompson's responses were inadequate, as McDowell adhered to his decision to discharge the men.

Barnes and Thompson then appealed their firings to the Kentucky Personnel Board. A hearing officer for the Personnel Board held an adjudicative hearing on the matter. Subsequently, the hearing officer issued his findings of fact, conclusions of law and recommended order. He found that Barnes had engaged in sexual harassment and upheld his dismissal on that ground.[1]

With regard to Thompson, the officer found that "technically" Thompson was not guilty of sexual harassment.[2] The officer further found that Thompson's work as the vending machine repair supervisor was satisfactory but that his performance of his duties as a training officer was "way below standard and a disservice to the trainees as well as to the Bureau." The officer concluded, "Here it is clear ... that the appellant received one promotion too many, one that he could not handle. Joe was a great repairman and would be an asset to the Bureau if utilized as such, but he is not a training officer." Accordingly, the officer recommended that Thompson be reinstated but to a position other than training officer.

After considering the hearing officer's report, the state Personnel Board sustained the officer's findings of fact and conclusions of law, thereby upholding Barnes's

1. Although the hearing officer's findings of fact relate incidents where Barnes was present during times Libby Williams claimed she was harassed, the officer's conclusions of law only state that Barnes harassed Jeanne Pherson, another Bureau employee, and Anna Faye Katon, a blind vendor.

2. Before making this finding, the officer had stated:

Joe could tell many dirty jokes or twist the meaning of an innocent remark so that it had

sexual connotations. Sexual harassment? No. Why? The atmosphere at the Brownsboro Road office was such that the comments offended no one. A great number of employees engaged in this conduct, even Libby Williams. Joe never made physical advances on Libby and when she felt he was getting too personal verbally, she was able to tell him and he stopped. Many times Libby initiated the conversation and then Joe may have had to decide when it should cease.

discharge. The Board reduced Thompson's sanction from a discharge to the thirty-day suspension he already had served and ordered him reinstated to his former position or to a position "of like status and pay."

Barnes sought judicial review of the Board's decision in state court.[3] The Board's decision was affirmed by a state trial court and on appeal on the ground that the decision to discharge Barnes for sexual harassment was supported by substantial evidence. The Kentucky Supreme Court denied review of the decision.

On March 17, 1983, while judicial review of Barnes's discharge still was pending in state court, Barnes and Thompson filed suit under 42 U.S.C. § 1983 in federal district court in Kentucky claiming that McDowell, with "the advice, encouragement, and assistance of Defendants Ed Fossett and Sam [Serraglio]" used the sexual harassment and unsatisfactory work allegations as a pretext for their discharge. In their complaint, Barnes and Thompson alleged that the real reason they were fired was in retaliation for having expressed, on various occasions, their opinions that certain Bureau practices under McDowell's supervision evidenced corruption and cronyism at the Bureau.[4]

On January 9, 1985, upon motion by the plaintiffs, the district court ordered that the federal litigation be held in abeyance until Barnes's appeals in the Kentucky courts were resolved.

After the Kentucky Supreme Court denied review of Barnes's discharge, Barnes and Thompson moved for a trial date in federal court. The defendants moved for summary judgment, arguing that the Board's decision against Barnes, and its affirmance in the state courts, constituted res judicata or collateral estoppel[5] of the federal action.

3. Thompson did not appeal the Board's decision in state court.

4. Specifically, Barnes and Thompson alleged in their complaint that they had complained,
    1. That the vending facilities operated by blind vendors throughout Kentucky under the auspices of the Bureau for the Blind's Business Enterprises Program and commonly known as "blind stands" should be audited on a frequent and regular basis.
    2. That the failure of the Bureau for the Blind to conduct regular and frequent audits of the "blind stands" allowed some of the vendors of these stands to underreport their actual earnings from the operation of their respective stands by a total of approximately $2,000,000 per annum; and that this underreporting should not be tolerated because it resulted in a loss to the Business Enterprises Program of a large sum of money in the form of mandatory "set-aside" payments from the vendors and reflected poorly on the honest "blind stand" vendors.
    3. The two blind vendors in particular, namely Faye Katon and Jerry Cameron, who are close personal friends of Defendant Charles McDowell, were grossly, openly, and notoriously underreporting their actual earnings as "blind stand" vendors to the Business Enterprises Program, and that this state of affairs brought the Business Enterprises Program and the blind vendors as a whole into disrepute and should not be tolerated.
    4. That the Bureau for the Blind condoned or encouraged discrimination against totally blind individuals involved in the "blind stand" program in favor of partially blind individuals.
    5. That the Defendant Charles McDowell failed to discipline inefficient and incompetent state employees or to support the Plaintiff Barnes in his efforts to discipline such workers.
    6. That the Bureau for the Blind deserved higher appropriations from the General Assembly of Kentucky than it received or that Defendant McDowell was willing to request.
    7. That the Defendant McDowell failed to investigate allegations of improper purchasing of parts for the repair of machines used in the Business Enterprises Program in violation of State government billing procedures.

5. The Supreme Court has noted:
    [t]he preclusive effects of former adjudication are discussed in varying and, at times, seemingly conflicting terminology, attributable to the evolution of preclusion concepts over the years. These effects are referred to collectively by most commentators as the doctrine of "res judicata." Res judicata is often analyzed further to consist of two preclusion concepts: "issue preclusion" and "claim preclusion." Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided. This effect also is referred to as direct or collateral estoppel. Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit. Claim preclusion therefore encompasses the law of merger and bar.
    *Migra v. Warren City School Dist. Bd. of Educ.,* 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 894 n. 1, 79

Barnes responded that the res judicata and collateral estoppel arguments were inapplicable to him because, among other reasons, neither the state board nor the state courts had made any finding regarding Barnes's contention that he was fired in retaliation for declaring that certain practices and individuals at the Bureau were corrupt. Barnes also contended that even if the Board's finding that he engaged in sexual harassment was given preclusive effect in federal court, a jury still could find that the motivating factor for his discharge was retaliation for his speech.

On September 17, 1986, the district court sustained the defendants' motion for summary judgment against Barnes's section 1983 claim in a non-final order. The court, however, did not dismiss Thompson's claim. Instead it ordered Thompson to file a memorandum addressing whether any issues resolved in the state administrative proceedings concerning his discharge had a preclusive effect upon his federal claim.

Thompson filed the requested memorandum. At the same time, Barnes moved the court to reconsider its September 17, 1986, order.

On November 6, 1986, the court denied Barnes's motion for reconsideration and made its dismissal of Barnes's claim a final and appealable order. The court stated that the state administrative and judicial proceedings already had determined "that [Barnes] was justly dismissed for good cause arising out of his sexually harassing a female employee." Consequently, the

district court apparently concluded that Barnes was collaterally estopped from relitigating in a section 1983 action the issues of the motivation and justification for his discharge. On December 3, 1986, Barnes filed a notice of appeal of the district court's dismissal of his section 1983 action.

In the same order issued on November 6, 1986, the district court denied the defendants' motion for summary judgment against Thompson. Although the court determined that the parties were bound by the Board's findings concerning the allegations about Thompson's misconduct, the court noted that the Board's findings were in Thompson's favor. The Board had determined that Thompson was not guilty of sexual harassment. Therefore, the court concluded that it was possible for Thompson to prevail in his retaliatory discharge claim,[6] so long as he could establish that he was discharged because he had voiced an opinion about a matter of public concern. Accordingly, the district court allowed discovery to proceed with respect to Thompson's federal claim.

On February 4, 1987, the defendants moved for summary judgment against Thompson partly on the ground that the speech Thompson claimed motivated his discharge did not address a matter of public concern but rather, touched "only upon matters of a personal interest as an employee."

On June 2, 1987, the district court granted the defendants' motion for summary

---

L.Ed.2d 56 (1984) (citations omitted). Some commentators and court decisions have used the term "res judicata" as being "virtually synonymous with 'claim preclusion.'" *Ibid.*

In the proceedings attendant to these appeals, the parties and the district court appear to have adopted the position that "res judicata" is synonymous with "claim preclusion" and "collateral estoppel" is synonymous with "issue preclusion." At this stage of the litigation, we will not disturb this usage although we will, during the course of our discussion of the legal issues, use the terms "claim preclusion" and "issue preclusion." We also express our hope that future litigants, in the interests of precision and clarity, will formulate arguments which refer solely to issue or claim preclusion and which refrain from using the predecessors of those terms, whose meanings have become so convoluted.

6. The court stated in its Memorandum Opinion and Order:

"The First Amendment issue was not litigated before the Personnel Board and it made no findings either express or implied. Therefore, since we are concerned with collateral estoppel rather than with *res judicata,* the causes of action between the administrative proceeding and this proceeding being different, the issue of unconstitutional motivation is not precluded by *the administrative decision....* However, both parties are bound by the factual findings of the Board that Thompson was guilty of inefficiency, but not guilty of sexual harassment...."

judgment after concluding that Thompson's speech had not addressed a matter of public concern. The court stated in its Memorandum Opinion and Order:

The expression plaintiff claims to have motivated his discharge was to the effect that the agency needed a 24–hour deadline for equipment repairs, that it did not divide its budget fairly, and that the agency should purchase only the best equipment at a fair price [7].... It is obvious to this court that this expression is of purely personal and parochial interest within the public agency for which the plaintiff works, if that.

\* \* \* \* \* \*

In holding that the plaintiff has not met this burden the court can only note that the subject of the plaintiff's speech is less imbued with the public interest than that of the plaintiffs in *Landrum* [*v. Eastern Kentucky Univ.*, 578 F.Supp. 241 (E.D.Ky.1984)], *McMurphy* [*v. City of Flushing*, 802 F.2d 191 (6th Cir. 1986)], *Ferrara* [*v. Mills*, 781 F.2d 1508 (11th Cir.1986)], or *Connick* [*v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)], and nothing like the cooperation with the state attorney general's investigation held to have merited protection in *Marohnic* [*v. Walker*, 800 F.2d 613 (6th Cir.1986)]. Just because the expenditure of public funds is tangentially implicated does not automatically entitle the expression to protection.

After the district court rendered its decision, Thompson timely filed a notice of appeal. Because the underlying facts are the same in both Barnes's and Thompson's appeals, their appeals have been consolidated for disposition before this court.

## II

In *University of Tennessee v. Elliott,* 478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986), the Supreme Court held, "when a state agency 'acting in a judicial capacity ... resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate,' federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." *Elliott,* 106 S.Ct. at 3227.

In addition, section 1738 of Title 28 of the United States Code requires that federal courts afford state court judgments both the issue and claim preclusive effects in subsequent actions under 42 U.S.C. § 1983 that the state courts would afford them. *See Elliott,* 106 S.Ct. at 3225 (citing *Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980) (issue preclusion), and *Migra v. Warren City School District Bd. of Educ.,* 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (claim preclusion)).

Kentucky courts do not apply the doctrine of claim preclusion in a subsequent suit involving facts already at issue in another action when the causes of action in the two proceedings are not the same. *See Vinson v. Campbell County Fiscal Court,* 820 F.2d 194, 197 (6th Cir.1987); *George v. United Kentucky Bank, Inc.,* 753 F.2d 50, 53 (6th Cir.), *cert. denied,* 471 U.S. 1018, 105 S.Ct. 2024, 85 L.Ed.2d 306, 474 U.S. 821, 106 S.Ct. 70, 88 L.Ed.2d 58 (1985). Moreover, in general, Kentucky courts apply the doctrine of issue preclusion or collateral estoppel, "only as to matters which were necessarily involved and determined in the former action, and is not conclusive

---

7. In a deposition, Thompson identified three subjects of speech which he claimed led to his discharge, and to whom they were said:

Q. You said certain things to someone. Who did you say them to?
A. (Inaudible)
Q. You need to speak up a little bit, Mr. Thompson, she can't hear you.
A. General conversation with agency's personnel and vendors.
....
Q. So if I remember them correctly, there was the fact that your section didn't get enough of the budget, and that there wasn't a 24 hour [repair] deadline [for equipment] until you posted one, and that you objected to the purchasing practices of the department. Those are the three areas that you thought they should do differently, right?
A. Not of the department; of our individual division.
Q. Right, but I'm saying those are the things you say you complained about that was the reason they fired you, right?
A. Yes, I think these were the main.

as to matters which were immaterial or unessential to the determination of the prior action or which were not necessary to uphold the judgment."

*Sedley v. City of West Buechel*, 461 S.W.2d 556, 558 (Ky.1970).

■ Barnes's section 1983 action to redress the alleged violation of his right to free speech is not the same cause of action as the state action in which he sought judicial review of an administrative decision. Accordingly, the doctrine of claim preclusion does not prevent Barnes from proceeding with his federal claim.

However, the district court concluded that the doctrine of issue preclusion, as applied by the Kentucky courts, does prevent Barnes from succeeding in his section 1983 claim. The court so held because the state courts sustained the Board's determination that Barnes was discharged for having engaged in sexual harassment. Thus, the district court determined that Barnes could not prevail in a federal action in which he essentially claimed that his discharge was unjustified.

When the Kentucky state courts reviewed Barnes's discharge, the only matter determined was whether the Board's factual finding that the discharge was justified because Barnes had engaged in sexual harassment was supported by substantial evidence in the record. Whether the defendants' motivation for the discharge was unconstitutional simply was not an issue in the state judicial proceedings. Thus, because Barnes's section 1983 action involves a constitutional issue which was not involved in the state proceedings, the district court erred in concluding that the doctrine of issue preclusion bars further litigation of Barnes's federal claim.

The district court dismissed Barnes's action before this court issued its decision in *Wicker v. Bd. of Educ.*, 826 F.2d 442 (6th Cir.1987), a case involving issues similar to those presented in Barnes's appeal. In *Wicker*, a Kentucky school superintendent was fired after a hearing before the school board employing him on charges that he inadequately handled the school system's financial affairs. Wicker, the superintendent, then filed suit in federal court under section 1983 claiming, *inter alia*, that the real reason for his discharge was because he had not supported some of the Board members in a recent election. After he filed suit in federal court, Wicker apparently filed the same suit in state court. The federal court decided to enter an abstention order and Wicker then filed in state court an *England* reservation of the federal issues.[8]

The state court reviewed the Board's findings and upheld the discharge. Wicker then returned to federal court and that court dismissed his action on the ground that the state decision upholding the discharge precluded consideration of his constitutional claim.

This court reversed the district court's decision concluding,

[t]he state court finding of legal cause ... does not resolve Wicker's federal discrimination claim under *Mt. Healthy [City Bd. of Educ. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) (a plaintiff may prevail in a section 1983 claim of retaliatory discharge if the plaintiff can show that he or she was engaged in a constitutionally protected activity and that the activity was a substantial or

---

**8.** In *England v. Louisiana Bd. of Medical Examiners*, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964), a federal court plaintiff was forced to go to state court after the federal court abstained to allow a state court to decide the state law issues raised in the federal action. The federal court concluded that the state law issues might be dispositive of the entire litigation and that therefore, abstention was proper in order to avoid an unnecessary conflict between state and federal jurisdiction. The Supreme Court held that the plaintiff was not bound to forego his choice of a

federal forum and could, by notifying the parties and the state court that he was reserving his federal issues, limit the state court's determination to the state issues, even though the state court might otherwise have had concurrent jurisdiction over the federal issues. However, the Court also held that even if a plaintiff files a reservation, a plaintiff can lose the right to a federal forum if the plaintiff fully presents the federal issues to the state court. *See England*, 375 U.S. at 421, 84 S.Ct. at 467.

motivating factor behind the discharge) ].[6]

[6] Defendants argue that *Kendall v. Bd. of Educ. of Memphis City,* 627 F.2d 1 (6th Cir. 1980), precludes Wicker's due process claims. *Kendall* found that the defendant Board could meet its burden concerning the denial of procedural due process by showing that its charges against plaintiff were true and that it would have discharged him regardless of the procedure provided. We agree with Wicker's argument here that the truth of the charge upon which his termination was upheld is not as important as the reason for which he was fired under *Mt. Healthy.* The truth of the charges raised is only important if defendants can show that Wicker would have been discharged therefor despite any protected activity.

*Wicker,* 826 F.2d at 449; *see also, Wicker,* 826 F.2d at 451 (noting that Kentucky may not apply its preclusion rules as strictly to questions of law and that different standards of proof may render issue preclusion rules inapplicable). We reached this conclusion in *Wicker,* even though we assumed that Wicker had tried to raise and fully litigate the issue of whether he was discharged in retaliation for his political views in the state courts, because it was clear from the record in that case that the state courts never reached the constitutional issue. *Wicker,* 826 F.2d at 449.

In Barnes's case, it is unclear to what extent, if any, he raised his constitutional claim in the state proceedings. However, it is clear from the record that his constitutional claim never was resolved by any of the state tribunals.

Unlike the plaintiff in *Wicker,* Barnes did not make an explicit *England* reservation of his federal claim after the district court decided to hold the federal litigation in abeyance until the state judicial review of his discharge had concluded. However, also unlike the plaintiff in *Wicker,* Barnes filed suit in state court *before* he filed suit in federal court. By splitting on his own initiative the state and federal actions stemming from his discharge, Barnes achieved the very same effect that he would have had he made an *England* reservation. Consequently, we do not view the absence of an *England* reservation as a factor which distinguishes the applicability of *Wicker* to this case. We find the analysis presented in *Wicker* persuasive and, accordingly, dispositive of Barnes's appeal.

The district court's initial conclusion is correct. The factual determination of the state administrative proceedings, as sustained by the state courts, that Barnes was guilty of sexual harassment may not be relitigated in federal court. However, the fact that Barnes harassed females during his tenure at the Bureau does not eliminate the possibility that the real reason he was discharged from the Bureau was because he spoke out on a matter of public concern. Thus, if Barnes can establish that he spoke on a matter of public concern and that his speech was a motivating factor for his dismissal, Barnes may be able to prevail in a retaliatory discharge action under section 1983 even though he was guilty of sexual harassment.

Accordingly, the district court erred in dismissing Barnes's federal action on the ground that the doctrine of issue preclusion, as applied in Kentucky, prevents consideration of his retaliatory discharge claim. We believe that Barnes must be given the opportunity to present evidence supporting his assertion that the real reason for his discharge was because his speech addressed a matter of public concern. Therefore, the district court's decision granting summary judgment in favor of the defendants on Barnes's claim is reversed and that case is remanded for further consideration.

### III

The district court allowed Thompson's case to proceed through the discovery stage and subsequently granted summary judgment in favor of the defendants on Thompson's claim after concluding that Thompson had not engaged in speech which addressed a matter of public concern.

In order to prevail in a retaliatory discharge action under section 1983, a plaintiff must first establish that he or she engaged in speech which is constitutionally protected because it addressed a matter of public concern. *Rankin v. McPherson,* —— U.S. ——, 107 S.Ct. 2891, 2896–97, 97 L.Ed.

2d 315 (1987); *Connick,* 461 U.S. at 146, 103 S.Ct. at 1690. Whether a plaintiff's speech addressed a matter of public concern is a question of law, requiring *de novo* review by an appellate court. *See Rankin,* 107 S.Ct. at 2897 & n. 9. If the plaintiff's speech did not address a matter of public concern, no further inquiry is necessary. *See Rankin,* 107 S.Ct. at 2896, 2898.[9]

In *Connick,* the Supreme Court provided guidance for determining whether a public employee's speech addressed a matter of public concern. In that case, an assistant district attorney, objecting to her employer's proposal to transfer her, circulated a questionnaire among her fellow workers asking their opinions concerning several office policies, including the transfer policy. Her employer then fired her for refusing to accept the transfer. The former assistant district attorney filed suit, claiming that she was fired because of her speech, i.e., the questionnaire.

The Supreme Court determined that only one question on the form, whether assistant district attorneys "ever [felt] pressured to work in political campaigns on behalf of office supported candidates," *Connick,* 461 U.S. at 149, 103 S.Ct. at 1691, addressed a matter of public concern. The Court concluded that the rest of the questions were not designed "to evaluate the performance of the office but rather to gather ammunition for another round of controversy with her superiors." *Connick,* 461 U.S. at 148,

103 S.Ct. at 1691. Accordingly, the Court concluded that those questions merely reflected "one employee's dissatisfaction with a transfer and an attempt to turn that displeasure into a cause célèbre." *Ibid.*

In reaching this conclusion the Court emphasized the limited nature of the inquiry into whether a public employee's speech addressed a matter of public concern:

When employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment. Perhaps the government employer's dismissal of the worker may not be fair, but ordinary dismissals from government service which violate no fixed tenure or applicable statute or regulation are not subject to judicial review even if the reasons for the dismissal are alleged to be mistaken or unreasonable. ... We hold only that when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.

---

**9.** If a plaintiff establishes that any part of his or her speech addressed a matter of public concern, the state then bears the burden of justifying the discharge on legitimate grounds. *See Rankin,* 107 S.Ct. at 2898; *McMurphy v. City of Flushing,* 802 F.2d 191, 197 (6th Cir.1986). To determine whether the state has met its burden, the court is required to balance " 'the interests of the [employee] as a citizen in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.' " *Connick,* 461 U.S. at 142, 103 S.Ct. at 1687 (quoting *Pickering v. Bd. of Educ.,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1972)). Factors which are relevant to this balancing analysis include the manner, time, and place of the employee's expression, and the context in which the dispute arose. Also relevant is whether the statement impairs discipline by superiors or harmony among coworkers, has a detrimental impact on close

working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise. *Rankin,* 107 S.Ct. at 2898–99. The balancing analysis is part of the "ultimate issue [of law]—whether the speech is protected." *See Rankin,* 107 S.Ct. at 2897 n. 9., 2898–99.

If, after these first two steps, a court determines that the employee's speech is protected, the employee then must show that the speech was a substantial or motivating factor in the adverse employment decision. Once an employee makes this showing, the defendant must establish by a preponderance of the evidence that it would have taken the same employment action even in the absence of the protected conduct, in order to escape liability. *See Mt. Healthy,* 429 U.S. at 287, 97 S.Ct. at 576. These issues are questions of fact. *Daniels v. Quinn,* 801 F.2d 687, 689 (4th Cir.1986).

*Connick,* 461 U.S. at 146–47, 103 S.Ct. at 1690.

In a case with facts relevant here, the District of Columbia Circuit relied on this passage from *Connick* when it rejected the claim of an FBI agent that he had been suspended without pay in retaliation for his speech. *Murray v. Gardner,* 741 F.2d 434 (D.C.Cir.1984), *cert. denied,* 470 U.S. 1050, 105 S.Ct. 1748, 84 L.Ed.2d 813 (1985).

The agent in *Murray* claimed that his criticism of a plan by his superiors to furlough one-third of the agents in his field office addressed a matter of public concern because "public monies and government efficiency [were] involved." The District of Columbia Circuit, implying that those two arguments can be raised in connection with virtually any public employment matter, concluded that if it accepted the agent's claim, "*Connick* would stand for nothing." *Murray,* 741 F.2d at 438.

■ We agree with the District of Columbia Circuit's reasoning in *Murray.* The mere fact that public monies and government efficiency are related to the subject of a public employee's speech do not, by themselves, qualify that speech as being addressed to a matter of public concern.

However, it is possible to view allegations that public monies are being spent unwisely and that a government program is being run inefficiently, as implying that a public agency or official is corrupt. This court recently "has held that speech disclosing public corruption is a matter of public interest and therefore deserves constitutional protection." *Solomon v. Royal Oak Township,* 842 F.2d 862, 865 (6th Cir. 1988) (citations omitted).

Yet while a simple allegation that a public employee's speech disclosed corruption in a public agency satisfies the pleading requirements of the Federal Rules of Civil Procedure, those same rules require that when a defendant has moved for summary judgment, a plaintiff must present concrete evidence to support the allegation in order to survive the motion. The evidence need not be conclusive on the issues presented in the litigation, but it must sufficiently indicate the existence of facts which are disputed by the parties and which are material to the litigation to defeat the defendant's motion. As the Supreme Court repeatedly has emphasized, Federal Rule of Civil Procedure 56(c)

> mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.... The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of [his or her] case
>
> ....

*Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

The speech alleged by Thompson in the complaint is concerned with the operation of the Bureau, a public agency. It is possible to read the allegations in the complaint as charging corruption in the agency, most notably on the part of McDowell, and as charging discrimination by the agency against totally blind individuals.

■ The defendants' motion for summary judgment was filed in February, 1987. By the time the district court ruled on the motion nearly four months later, Thompson had been afforded full opportunity to conduct discovery and to supply the district court with concrete evidence supporting the allegations raised in his complaint. Apparently, the only evidence presented to the court by either side was Thompson's deposition. We have reviewed the pages of that deposition designated for our consideration and conclude that the district court did not err in determining that none of the three items Thompson identified as the cause of his dismissal addressed matters of public concern. While Thompson may have been justified in his beliefs that his section of the Business Enterprises Program did not receive enough of the operating budget, that the Program should have had a 24–hour repair deadline before he instituted one and that the wisdom and propriety of

some of the Program's purchasing practices was questionable,[10] he presented no evidence linking any of these charges to corruption in the Bureau or in the Program. Consequently, instead of having addressed a matter of public concern, Thompson's complaints appear to be nothing more than examples "of the quintessential employee beef: management has acted incompetently." *Murray*, 741 F.2d at 438.

Thus, on the basis of the record before it, the district court did not err in granting summary judgment in favor of the defendants on the ground that Thompson's speech did not address a matter of public concern.[11]

### IV

For the foregoing reasons, the district court's decision awarding summary judgment in favor of defendants in Thompson's case is AFFIRMED No. 87–5776. The decision in Barnes's case is REVERSED and that case is REMANDED for further consideration No. 86–6261.

---

10. At one point, during his deposition Thompson stated:

> I wanted to make sure that when things were purchased, we knew that we were paying for what. I felt we needed to know who we were paying and what we were paying for. I didn't feel we should just give blank checks to people because they are suppliers of anything.

At another time he stated:

> I wanted to do things different. I wanted to buy the best machines. I felt like we weren't buying the best.

Whatever implications may be read into these statements, Thompson never presented the court with any evidence indicating even a remote connection between these practices and corruption at the Bureau. Accordingly, his statements standing alone do not sufficiently raise an issue of material fact to survive the defendants' motion for summary judgment.

11. Barnes's allegations that his speech addressed a matter of public concern were raised in the same complaint as Thompson's. In further proceedings on his claim, those allegations are subject to the same evidentiary requirements applied to Thompson's claim. In other words, on remand, Barnes must present the court with evidence supporting his allegations that his speech addressed a matter of public concern.