56 F.3d 64
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 Christopher FLORIO and Sharon Florio, Plaintiffs-Appellants,
v.
Gary SKOREPA and City of North Royalton, Defendants-Appellees.
 No. 93-4174.
 United States Court of Appeals, Sixth Circuit.
 May 30, 1995.
 
 Before: NELSON and DAUGHTREY, Circuit Judges, and CHURCHILL, District Judge.*
 PER CURIAM.
 
 
 1
 Christopher Florio, an employee of the City of North Royalton, was discharged by the mayor because of questions he raised during an open session of the City Council regarding the operation of his department. He brought this action under 42 U.S.C. Sec. 1983 against the City and Mayor Gary Skorepa, alleging that he was discharged in retaliation for his exercise of rights protected by the First Amendment. The district court granted summary judgment against Florio, finding that his speech was not on a matter of public concern and, thus, could not support a retaliatory discharge action.
 
 
 2
 Florio appeals this adverse grant of summary judgment. We agree that Florio's speech did not implicate a matter of public concern, because it was confined to allegations of misspending and inefficiency in his work unit. We therefore affirm the judgment of the district court.
 
 I.
 
 3
 Florio was employed as a laborer in the Service Department of North Royalton, Ohio. On September 18, 1989, Florio addressed the City Council during a public question period at the end of its regular meeting. Defendant Skorepa, Mayor of North Royalton, was present on the dias. Florio identified himself as a taxpayer and asked two questions: (1) why another city employee, Skip Mayer, had been assigned a city car and was earning an excessive salary due to overtime for clerical work that should have been done by a worker with a lower pay grade, and (2) why the City's Service Director, Jack Darby, was allowed to threaten employees with bodily injury and was the subject of a high number of grievances. A council member inquired as to how Florio had personal knowledge of the Service Department. Florio then identified himself as an employee of that department. Another council member asked Mayor Skorepa to respond to the inquiries, and Skorepa indicated that he could not comment because Florio and others had grievances pending against Darby[1] and because Mayer's position was under negotiation with the union.
 
 
 4
 Several days later, Skorepa terminated Florio's employment. Florio filed a grievance with the union. An arbitrator ruled that Florio's actions were "egregious" but did not constitute just cause for termination.
 
 
 5
 Florio then filed his Sec. 1983 complaint in February 1991. In response, defendant Skorepa, in his individual capacity, filed a motion to dismiss on the basis of qualified immunity. The district court denied this motion, and Skorepa took an interlocutory appeal to this court.
 
 
 6
 On May 12, 1992, the Sixth Circuit affirmed in part and reversed in part. The opinion, however, related not to the question of qualified immunity but to the threshold issue of whether Florio's speech was protected under the First Amendment. The panel held that "Florio's speech relating to threats by his department head was directed at issues outside the concern of the public...." Accordingly, this court reversed the denial of qualified immunity as to that portion of Florio's speech. The panel affirmed the denial of summary judgment insofar as Florio's speech alleging misspending and inefficiency was concerned. The panel said that it was "unable to discern whether Florio's speech [could] be read as an allegation of public corruption or whether Florio merely sought the correction of work-related concerns in a public forum. The resolution of this uncertainty is necessary in order to determine whether his speech is a matter of public concern and deserving of constitutional protection." The panel thus remanded the case to the district court to determine whether Florio's speech was on a matter of public concern.
 
 On remand, the district court held that:
 
 7
 Although Plaintiff Florio may have been justified in believing that the City was misspending tax dollars, he presented no evidence linking any of these charges to corruption in the City Service Department and admitted that he did not intend to uncover any illegal activity or breach of the public trust. Therefore, Plaintiff Florio's comments were of personal interest and ... outside the public concern.
 
 
 8
 The district court then dismissed Florio's complaint without prejudice.
 
 II.
 
 9
 In order to prevail in a retaliatory discharge action under Sec. 1983, a plaintiff must first establish that he or she engaged in speech that is constitutionally protected because it addressed a matter of public concern. Rankin v. McPherson, 483 U.S. 378, 384 (1987); Barnes v. McDowell, 848 F.2d 725, 732 (6th Cir. 1988), cert. denied, 488 U.S. 1007 (1989). Whether a plaintiff's speech addressed a matter of public concern is a question of law, requiring de novo review by an appellate court. Barnes, 848 F.2d at 733. If the plaintiff's speech did not address a matter of public concern, no further inquiry is necessary. Id.
 
 
 10
 We reviewed the law relevant to speech on a matter of public concern in our earlier opinion in this case, noting as follows:
 
 
 11
 The Supreme Court has held that when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior. Connick, 461 U.S. at 147. The First Amendment is not implicated where personal interests are raised. Id. at 143. Florio contends that his speech addressed the public concerns of 1) the allocation of money via the use of a city car and paid overtime and, 2) threats against city employees by the City Service Director.
 
 
 12
 The Supreme Court, in Pickering, indicated that a matter of public concern would be one which presented a question that was determined by popular vote and involved an issue of public interest. 391 U.S. at 569-70. The Supreme Court further[] defined "public concern" in Connick[,] finding it is "any matter of political, social, or other concern to the community." 461 U.S. at 146. This Court has interpreted those decisions several times. This Court upheld a motion to dismiss in Garvie [v. Jackson, 845 F.2d 647 (6th Cir. 1988)] finding that Garvie's "criticisms more closely resembled an employee's complaints regarding his superior's actions and his own responsibilities ... than a citizen's speaking out on a matter of public decisionmaking." 845 F.2d at 651. The decision in Barnes v. McDowell directly addressed discharged public employees and comments concerning public funds and government efficiency. 848 F.2d 725, 733 .... The Barnes[] Court noted that "the mere fact that public monies and government efficiency are related to the subject of a public employee's speech do not, by themselves, qualify that speech as being addressed at a matter of public concern." Id. at 734. The Barnes[] Court acknowledges, however, that allegations of misspending and inefficiency may imply that an agency or official is corrupt. Public corruption is a matter of public interest and warrants constitutional protection. Id. at 734 (citing Solomon v. Royal Oak Township, 842 F.2d 862, 865 (6th Cir. 1988)).
 
 
 13
 On remand, the district court observed that "[a]lthough Plaintiff Florio may have been justified in believing that the City was misspending tax dollars, he presented no evidence linking any of these charges to corruption in the City Service Department and admitted that he did not intend to uncover any illegal activity or breach of the public trust." As indicated above, Barnes holds that "[t]he mere fact that public monies and government efficiency are related to the subject of an employee's speech do[es] not, by [itself], qualify that speech as being addressed to a matter of public concern." 848 F.2d at 734. Moreover, the district court's conclusion, that misspending must be linked to proof of corruption, is further supported by this passage from Barnes:
 
 
 14
 While [the plaintiff] may have been justified in his beliefs that his section of the Business Enterprise Program did not receive enough of the operating budget, that the Program should have had a 24-hour repair deadline before he instituted one and that the wisdom and propriety of some of the Program's purchasing practices was questionable, he presented no evidence linking any of these charges to corruption in the Bureau or in the Program. Consequently, instead of having addressed a matter of public concern, Thompson's complaints appear to be nothing more than examples "of the quintessential employee beef: management has acted incompetently."
 
 
 15
 848 F.2d at 734-35.
 
 
 16
 The Sixth Circuit has recently examined this issue in another case, Rahn v. Drake Center, Inc., 31 F.3d 407 (6th Cir. 1994). Rahn was discharged following a press release by a committee of which she was chair; the press release was highly critical of the new administration of the public hospital at which Rahn worked as a nurse. The Rahn panel cited Murray v. Gardner, 741 F.2d 434 (D.C. Cir. 1984), cert. denied, 470 U.S. 1050 (1985), in which the D.C. Circuit held that since matters involving public monies and government inefficiency may be raised in connection with virtually any public employment matter, they could not be used to convert an issue into one of public concern within the stricture of Connick.
 
 
 17
 [T]he fact that Rahn believed that the money was not being spent in a wise fashion, by itself, is insufficient to find that the press release addressed a matter of public concern.... The focus of this comment is not on patient endangerment arising from the misapplication of tax dollars; rather, the focus is on the employees' discontent with new work rules which might lead to a patient endangerment situation....Moreover, this is not a case where the public employee has 'uncovered' a fraud being committed on the taxpayers.... The public was aware of the facts.
 
 
 18
 Rahn, 31 F.3d at 412-413. In Rahn, we implicitly recognized that the scope of public concern is broader than the narrow area of corruption: "patient endangerment" (i.e., a decline in the level of services provided as a result of the alleged misspending) would certainly have been a matter of public concern.
 
 
 19
 However, Florio has failed to demonstrate that his comments fell within the perimeters of public concern that we have recognized in Barnes and in Rahn. Florio describes only waste and inefficiency, and not some more perilous or scurrilous flaw in a public agency's functioning.
 
 III.
 
 20
 Because we do not find that Florio spoke on a matter of public concern, we need not engage in a broader inquiry. As Florio is unable to make a prima facia showing that his First Amendment rights are infringed, we need not address the question of qualified immunity. The judgment of the district court is therefore AFFIRMED, and the case is DISMISSED.
 
 
 
 *
 The Honorable James P. Churchill, Senior United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Florio had filed seven grievances against Darby, from April through August of 1989. In these grievances, Florio had variously complained that: (1) when he had been injured on the job, he had been denied special duties, although another injured employee was given special duties; (2) Darby had been obnoxious about a misunderstanding which arose when a contractor failed to show; (3) Darby took away his newspaper which he read during breaks; (4) Darby assigned Florio to replace Darby's brother-in-law on the back of the trash pick-up truck, despite the availability of employees with less seniority; (5) Darby responded in a sarcastic manner when Florio approached him about a grievance, thrust Florio out of his office, and violently slammed the door behind Florio. Darby denied relief when each of these grievances was filed through union channels