Gary W. ROSE, Plaintiff,

v.

Robert STEPHENS, Defendant.

No. CIV.A. 99–77.

United States District Court,
E.D. Kentucky,
Frankfort Division.

Oct. 25, 2000.

Bernard Pafunda, Pafunda Law Office, Lexington, KY, for plaintiff.

Sheryl G. Snyder, David L. Hoskins, Brown, Todd & Heyburn, P.L.L.C., Louisville, KY, for defendants.

## MEMORANDUM OPINION
## AND ORDER

HOOD, District Judge.

The Court has previously ruled on a motion to dismiss in this matter, and has held that only the claims against Secretary

Stephens in his official capacity under 42 U.S.C. § 1983, for perspective injunctive relief, and against Secretary Stephens in his individual capacity under 42 U.S.C. § 1983, for monetary and injunctive relief, remain viable. [Record No. 19].

Accordingly, Plaintiff seeks to amend his complaint and join an additional defendant in this action [Record No. 27]. The defendant has responded to this motion [Record No. 30], to which the plaintiff has replied [Record No. 42].

In addition, the defendant has moved for summary judgment in this case. [Record No. 29]. The plaintiff has responded [Record No. 42] to which the defendant has replied [Record No. 47].

The time for further responsive pleadings has lapsed, and these matters stand ripe for review.

## Standard of Review

In determining whether to grant a motion for summary judgment, the Court must view the facts presented in a light most favorable to the non-moving party. *Pride v. BIC Corp.*, 218 F.3d 566, 575 (6th Cir.2000). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). The Sixth Circuit has held that when determining whether or not an issue of fact is genuine and material, "the court must decide whether the evidence is such that reasonable jurors could find by a preponderance of the evidence that the non-moving party is entitled to a verdict, or whether the evidence is so one-sided that the moving party must prevail as a matter of law." *Pride*, 218 F.3d at 575.

## Factual Background

In light of the above standard, the following facts are assumed to be true. Plaintiff was employed as the Commissioner of the Kentucky State Police in August of 1999. He wrote a letter to Secretary of the Justice Cabinet, Robert Stephens, complaining of the waste, mismanagement and unlawful employment policies within the Kentucky State Police. After receipt of said letter, dated August 18, 1999, Plaintiff was told that the letter must be withdrawn or he would be fired by Secretary Stephens. Plaintiff did not withdraw the letter and was terminated on August 26, 1999.

## Discussion

 In cases which arise under 42 U.S.C. § 1983 and involve allegations of infringement upon the right to free speech, the Court must exercise a gatekeeper function. The Court must first decide if the plaintiff's speech addressed matters of public concern, thus necessitating an analysis under the First Amendment. The U.S. Supreme Court has explained that,

> "When employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment. Perhaps the government employer's dismissal of the worker may not be fair, but ordinary dismissals from government service which violate no fixed tenure or applicable statute or regulation are not subject to judicial review even if the reasons for the dismissal are alleged to be mistaken or unreasonable."

*Connick v. Myers*, 461 U.S. 138, 146–47, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983) (citations omitted).

 At its most basic level, a matter of public concern is a "matter of political, social, or other concern to the community." *Jackson v. Leighton*, 168 F.3d 903, 909 (6th Cir.1999). The Sixth Circuit has distinguished "matters of public concern from internal office politics." *Id.* It is important to note that "Federal courts normally do not review personnel decisions reacting to an employee's behavior when a public employee speaks not as a citizen upon mat-

ters of public concern, but instead as an employee upon matters of only personal interest." *Id.* (internal citations omitted).

The Sixth Circuit has explained that the "mere fact that public monies and government efficiency are related to the subject of a public employee's speech do[es] not, by [itself], qualify that speech as being addressed to a matter of public concern." *Id.* at 909–910, quoting *Barnes v. McDowell,* 848 F.2d 725, 734 (6th Cir.1988). In sum, if the "speech is not related to a matter of public concern, we do not evaluate the reasons for the decision." *Id.* at 910.

■ In order to "determine whether the speech involves a matter of public concern, we look to the content, form, and context of the statements in light of the record as a whole." *Jackson,* 168 F.3d at 910. In the case at bar, Rose presented a memo to his supervisor, explaining Rose's intent to terminate another state employee, Patrick Simpson, and detailing Rose's grievances against Simpson.

■ This memorandum detailed Simpson's request for additional weapons and vehicles. In his deposition, Rose admits that these requests went through the proper channels at the Kentucky State Police, and that Rose approved these purchases himself. [Rose Depo. 1, at 58–67, 104–106]. The memorandum also suggests that the personnel transfers suggested by Simpson were inefficient and failed to utilize employees at a level of maximum efficiency. However, during his deposition, Rose conceded that all of the transferred personnel were qualified for their new placement, and that he approved the moves. Rose Depo. 1, at 114–115, 118–119. Finally, the internal memorandum indicated that Rose felt some of Simpson's conduct was unprofessional and the Rose believed that Simpson was disliked and disrespected within the Kentucky State Police.

This memorandum was circulated only to Rose's superior, the defendant in this case, Robert Stephens. Rose requested that his memorandum be forwarded to the Governor of Kentucky, Paul Patton, as Patton originally requested that Simpson be assigned to his position within the Kentucky State Police. Rose did not attempt to place this memorandum with the press, and did not express a desire to make these issues public.

During his deposition, Rose acknowledged that he wrote the memorandum in his official capacity in order to inform Stephens of his decision to abolish Simpson's position and reduce his rank. Rose. Depo. 1, at 86–87. Simpson regarded the other six pages of the memorandum as "information that [Rose] felt [Stephens] and the Governor needed to have in support" of Simpson's personnel action. *Id.* Rose's motivation for drafting this memorandum becomes clear when reviewing the record as a whole. Rose notes that Simpson made work requests and issued orders to employees while Rose was recovering from surgery in June of 1999. The employees did not appreciate Simpson's orders while Rose was away from the office, and a number of high ranking Kentucky State Police employees called Rose at home to complain of Simpson's behavior. This concerned Rose, and he told his employees not to comply with Simpson's orders until Rose returned to work and reviewed the situation. In the meantime, Rose acknowledges that he "began to hear rumors within the K[entucky] S[tate] P[olice] concerning the possibility of Rose's termination by the Governor if demands Simpson had previously made were not carried out." Plaintiff's Response at 3 [Record No. 42].

The facts of this case make it clear that an internal power struggle was surfacing at the Kentucky State Police. Rose admits that he was aware of rumors regarding his possible termination. In the mist of this threatening environment, Rose chose to draft an internal memorandum calling for Simpson's removal. While the memorandum alleged that Simpson was inefficient, difficult, and frequently made

decisions that wasted taxpayer money, these issues do not rise to the level of public concern for three reasons.

First, the memorandum does not allege any illegal activity. In fact, Rose admits that he approved all of the purchase requests and personnel transfers made by Simpson. In addition, the transfers and promotions effectuated through this process benefitted only those individuals qualified to assume the positions they were placed in. Second, Rose never attempted to make these allegations public. These concerns were addressed only to individuals capable of resolving this internal dispute between the state employees. Rose drafted this memorandum as the State Police Commissioner, not as a private citizen. This evidences that the dispute concerned internal agency matters, rather than matters of public concern. Finally, most of the allegations presented in the memorandum concerned purchase and personnel decisions made long before the conflict arose in June, 1999. The memorandum was drafted only after Rose was confronted with rumors of his own dismissal.

The Court is able to conclude, based on the record as a whole, that the memorandum that serves as the basis for Rose's free speech claim does not rise to the level of public interest. The memorandum itself states that Simpson's "reputation within the agency, his inflated salary ($85,000.00 per year), the mere fact that a trooper could be elevated to this status, along with his actions over the course of the past two years has caused serious morale problems within the State Police." Record 42, Exhibit 1 at 2. This language clearly indicates that this memorandum addressed a matter of internal concern, rather than public concern. As such, Rose is not entitled to "intrusive oversight by the judiciary in the name of the First Amendment." *Connick v. Myers,* 461 U.S. 138, 146, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983) (citations omitted).

Allowing Rose to join Governor Paul Patton in this action as an additional defendant would be futile. Claims against Patton would arise under the same analysis utilized in this opinion. Rose's claims against Patton are not actionable. While the administrative decision to terminate Rose may not have been prudent, it was not a violation of Rose's rights under the First Amendment.

Accordingly,

**IT IS ORDERED:**

(1) That Defendants' motion for summary judgment be, and the same hereby is, **GRANTED;**

(2) That the plaintiff's motion to amend his complaint and join an additional party be, and the same hereby is, **DENIED;**

(3) That this action be, and the same hereby is, **DISMISSED AND STRICKEN FROM THE ACTIVE DOCKET.**