**NOT RECOMMENDED FOR PUBLICATION**
File Name:  16a0699n.06

**No. 16-1552**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| GLEN NAGHTIN, | ) | **FILED** |
| | ) | Dec 30, 2016 |
| Plaintiff-Appellant, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| MONTAGUE FIRE DISTRICT BOARD; DENNIS | ) | COURT FOR THE WESTERN |
| ROESLER, in his personal and official capacity, | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |

BEFORE: BOGGS, GILMAN, and DONALD, Circuit Judges.

BOGGS, Circuit Judge.  This is a case about the scope of First Amendment protection for public employees.  The plaintiff-appellant, Glen Naghtin, was a firefighter for the Montague Fire Department. He was fired from the department after he circulated a petition calling for the reinstatement of Donald Roesler to the position of unit captain, and then presented the petition to the Montague Fire District Board.  After his termination, he brought suit under 42 U.S.C. § 1983 against the Montague Fire District Board and Fire Chief Dennis Roesler, alleging that his dismissal violated his First Amendment rights to free speech and to petition for redress.  The district court awarded summary judgment to the defendants, reasoning that Naghtin's petition did not touch on a matter of public concern; that if it did, Naghtin's First Amendment rights were outweighed by the department's right to maintain efficiency; and that even if Naghtin could make a cognizable claim for relief, Chief Roesler was entitled to qualified immunity.  Naghtin

challenges all three determinations on appeal.  Because we find that the petition did not touch

upon a matter of public concern, we affirm the decision of the district court.

I

A

Glen Naghtin began working with the Montague Fire Department (the Department) in

May 1980.  He served continuously with the Department until his termination on December 7,

2011.  Dennis Roesler, one of the defendants-appellees in this case, was promoted to Chief of the

Department in 1998.

In 2009, the Montague Fire District Board (the Board) authorized the construction of a

new fire station.  After construction had commenced, Donald Roesler began expressing concerns

about the structure, including numerous fire-code violations and deviations from the station's

planned specifications.  Donald was the brother of then-Chief Dennis Roesler (their father had

previously served as Chief), and Donald was Captain of the Montague Fire District, elected to

the post by the other fire fighters of the district.  When Donald's concerns remained unanswered,

he requested a leave of absence from the Department until the tensions surrounding his

objections subsided.  Chief Dennis Roesler denied Donald's request and subsequently demoted

Donald from his position as Captain.  Donald re-submitted his leave request, which was

ultimately approved for a period of six months.  As Donald's six-month leave was expiring, with

nothing having been done regarding the new fire station, Donald requested an extended leave.

This leave was also granted.  When Donald's extended leave was about to expire and still

nothing had been done regarding the new fire station, it became clear that Donald needed to

either return or resign.

At this time, Naghtin and several other firefighters decided to take action. Naghtin created a petition, which he circulated to various members of the Department. Naghtin intentionally chose not to circulate the petition to Chief Roesler or any other member of the Roesler family. The petition, which called for Donald's reinstatement as Captain of the Department, garnered thirteen signatures from district firefighters. The petition further explains:

> Don has an abundance of knowledge and experience, both from the Montague Fire District and the United States Navy. Don has received leadership training from the military and specialized training through the Fire District that are invaluable assets that can't be provided by another member of the Fire Department. A person with Don's level of knowledge, training and experience is [sic] rare commodity.
>
> Don has invested over 25 years into the Fire District and our community as a Fire Fighter. 12 of those years were spent being the Captain.
>
> Don possesses many qualities that can't be easily replaced. For the long term good of the Fire District, Fire Department, and its tax payers, we feel that any and all things possible should be done to reinstate Donald Roesler II to the position of Captain as soon as possible.

Naghtin sent the signed petition to Chief Roesler and the members of the Board, which then held a special Personnel Committee meeting on November 29, 2011 to discuss a proper course of action.

At the meeting, the Board's attorney advised them that the petition should be formally construed as a complaint. As a complaint, it was subject to the Department's Personnel Policies and Procedures, which set forth a four-step procedure for handling employee complaints. Of relevance to this appeal, the Department's policies specifically required that complaints first be submitted to the Fire Chief. Should that not resolve the matter, then the employee may then request an officers' meeting. Only if those two avenues of relief fail is an employee permitted to submit a complaint to the Board. Since Naghtin had instead submitted his petition directly to the

Board, he was found to have violated the Department's policies. Noting that Naghtin had previously violated the Department's policies on several occasions,[1] the Board informed Naghtin that a special meeting would be held on December 7, 2011 to address any needed disciplinary response by the Department.

At the December 7 meeting, Naghtin attended and spoke to the Board, claiming that he "did not see [the petition] as a complaint," but rather as "a request for action." Chief Roesler also attended the meeting, and recommended that Naghtin be terminated. The Board voted to accept Chief Roesler's recommendation, and Naghtin was summarily terminated. At no point during this meeting did the Board discuss any of Naghtin's other alleged violations of the Department's policies.

B

After his termination, Naghtin brought suit in federal district court under 42 U.S.C. § 1983, alleging that Chief Roesler and the Department had violated his First Amendment rights to free speech and to petition for redress. After a short period of discovery, both parties filed motions for summary judgment. The district court denied relief for Naghtin and granted relief to the defendants. In its opinion, the district court reasoned that Naghtin had failed to demonstrate that his petition amounted to constitutionally protected conduct because it concluded that he was not speaking on a matter of public concern. Specifically, the district court characterized Naghtin's petition as "quintessential employee beef" rather than a matter of general concern to the community. The court went on to explain that, even if Naghtin's petition could be construed as a matter of public concern, the defendants were still entitled to summary judgment because the

---

[1] Naghtin had allegedly violated Department policies on four previous occasions: 1) In July 2009, he made false statements and complaints; 2) in May 2010, he sent a complaint directly to the Fire Board Chair; 3) at an unspecified time, he failed to follow instructions; and 4) on unspecified occasions, he disregarded proper Department procedures.

Department's interest in maintaining efficiency outweighed Naghtin's First Amendment rights

(under the balancing test announced in *Pickering v. Board of Education*, 391 U.S. 563, (1968)),

and because Chief Roesler was entitled to qualified immunity. Naghtin brings this timely appeal.

## II

We review a district court's decision to grant summary judgment *de novo*. *Griffin v.*

*Finkbeiner*, 689 F.3d 584, 592 (6th Cir. 2012). Summary judgment is appropriate only where

"the pleadings, depositions, answers to interrogatories, and admissions on file, together with any

affidavits, show that there is no genuine issue as to any material fact such that the movant is

entitled to judgment as a matter of law." *Ventas, Inc. v. HCP, Inc.*, 647 F.3d 291, 324 (6th Cir.

2011) (internal quotation marks omitted). In evaluating a motion for summary judgment, we

must view the evidence and draw all inferences in favor of the non-moving party.[2] *Boulton v.*

*Swanson*, 795 F.3d 526,530 (6th Cir. 2015).

## A

To make a *prima facie* case for a First Amendment retaliation claim, an employee must

show that: (1) he was engaged in constitutionally protected conduct; (2) an adverse action was

taken against him that would "deter a person of ordinary firmness from continuing to engage in

that conduct"; and (3) the adverse action was motivated, at least in part, by his protected conduct.

*Handy-Clay v. City of Memphis*, 695 F.3d 531, 539 (6th Cir. 2012) (citation omitted). At this

stage in the litigation, neither party appears to dispute that the second and third elements of a

---

[2] The appellees note that the appellant relies on depositions that were filed with the district court *after* it had ruled on the parties' summary judgment motions, and argues that the information in those depositions should not be considered by this court on appeal. *See* Appellee's Br. at 28–29. However, as the appellant notes in his reply brief, excerpts from those depositions were included in the plaintiff's motion for summary judgment before the trial court; failure to file the depositions in full was the result of simple negligence; and the district court permitted the plaintiff-appellant to file the depositions into the record after appeal was sought. *See* Reply Br. at 2–5. Because the depositions are now a part of the district court record, and because the relevant excerpts were included in the plaintiff's motion for summary judgment, their consideration on appeal is not barred by the principle that "[o]ur review is limited to the record as it stood before the district court at the time of its ruling." *MacGlashing v. Dunlop Equipment Co.*, 89 F.3d 932, 936 (1st Cir. 1996) (internal quotation omitted).

First Amendment retaliation claim have been satisfied. Naghtin's termination would undoubtedly satisfy the second element, and he can establish a causal link between his termination and his petition.

The outcome of this case, therefore, depends upon whether or not Naghtin was engaged in constitutionally protected conduct. The Supreme Court has devoted much time and energy attempting to define the scope of First Amendment protections in the government workplace. On the one hand, it is clear that "[w]hen a citizen enters government service, the citizen by necessity must accept certain limitations on his or her freedom." *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006) (citation omitted). On the other hand, citizens are not required to "forfeit all their First Amendment rights simply because they are employed by the state or a municipality." *Handy-Clay*, 695 F.3d at 539 (citing *Garcetti*, 547 U.S. at 417). Rather, a government employee retains the right to speak upon "a matter of legitimate public concern" in which "free and open debate is vital to informed decision-making by the electorate." *Connick v. Myers*, 461 U.S. 138, 145 (1983) (quoting *Pickering v. Board of Education*, 391 U.S. 563, 571–72 (1968)). A court evaluating an alleged First Amendment retaliation claim must seek to balance "the individual and societal interests that are served when employees speak on matters of public concern," with "the needs of government employers attempting to perform their important public functions." *Handy-Clay*, 695 F.3d at 540 (quoting *Garcetti*, 547 U.S. at 420).

To achieve this balance, the Supreme Court has set out a three-part test to determine whether a public employee's speech is constitutionally protected. Under this test, the employee must show that: (1) his speech was made as a private citizen, rather than pursuant to his official duties; (2) that his speech involved a matter of public concern; and (3) that his interest in speaking on the matter of public concern outweighed the government-employer's interest in

"promoting the efficiency of the public services it performs through its employees." *Ibid.* (quoting *Garcetti*, 547 U.S. at 417–18). The district court assumed, and there is nothing in the record or in our case law to suggest otherwise, that Naghtin's speech was made as a private citizen because the petition was not "itself ordinarily within the scope of [Naghtin's] duties." *Naghtin v. Montague Fire Dist. Bd.*, 175 F. Supp. 3d 813, 817 (W.D. Mich. 2016) (quoting *Lane v. Franks*, 134 S. Ct. 2369, 2379 (2014)). Thus, the thrust of Naghtin's appeal concerns whether his speech involves a matter of public concern, and if so, whether his interest in speaking outweighs the government's interest in promoting efficiency.

B

Whether Naghtin's petition touches upon a matter of public concern is a question of law that asks us to examine the "content, form, and context of a given statement, as revealed by the whole record." *Handy-Clay*, 695 F.3d at 543 (internal citation omitted). Naghtin argues that his petition, properly interpreted through this lens, rises above "quintessential employee beef" and constitutes a matter of public concern. *See Barnes v. McDowell*, 848 F.2d 725, 735 (6th Cir. 1988). Although Naghtin presents a closer case than some of our prior precedent, we hold that his petition does not amount to a matter of public concern.

Federal courts have long been instructed not to "constitutionalize the employee grievance," *Connick*, 461 U.S. at 154, so as to avoid "compromis[ing] the proper functioning of government offices." *City of San Diego v. Roe*, 543 U.S. 77, 82 (2004). Our case law has consistently held that mere allegations of managerial incompetence do not amount to constitutionally protected speech. *See Barnes*, 848 F.2d at 735 ("Thompson's complaints appear to be nothing more than examples of the quintessential employee beef: management has acted incompetently." (internal quotation omitted)). This is not to say that managerial incompetence

can never rise to a level where exposing it becomes a protected First Amendment activity, however. On the contrary, where exposing managerial incompetence includes "allegations that public monies are being spent unwisely and that a government program is being run [so] inefficiently" that "a public agency or official is corrupt," *id.* at 734, we have found that speech to be a matter of public interest meriting constitutional protection. This can be a deceptively difficult standard to meet, however, because "[t]he mere fact that public monies and government efficiency are related to the subject of a public employee's speech do not, by themselves, qualify that speech as being addressed to a matter of public concern." *Ibid.* In *Barnes*, the plaintiff alleged a First Amendment retaliation claim, arguing that he was fired from his position as Director of the Business Enterprises Program for the Bureau for the Blind, a Kentucky state agency, after criticizing certain agency practices. *Id.* at 726–28. In particular, the plaintiff in *Barnes* criticized the state agency for "giv[ing] blank checks to . . . suppliers" and for failing "to buy the best machines" for the agency's programs. *Id.* at 735 n.10. Nonetheless, because the plaintiff had "never presented the court with any evidence indicating even a remote connection between these practices and corruption at the Bureau," we concluded that he was not speaking on a matter of public concern. *Ibid.*

We have similarly analyzed First Amendment retaliation claims that involve disputed personnel decisions. In *Brown v. City of Trenton*, 867 F.2d 318 (6th Cir. 1989), we addressed a First Amendment retaliation claim brought by several disgruntled police officers who were disciplined after sending a letter to their police chief criticizing what they saw as a lack of support for their specialized emergency unit. Noting that "[t]he First Amendment does not require a public office to be run as a roundtable for employee complaints over internal office affairs," *id.* at 322 (quoting *Connick*, 461 U.S. at 149), we concluded that "the employee's

personal interest *qua* employee predominates over any interest he might have as a member of the general public" such that the disputed letter could not properly be characterized as touching upon a matter of public concern. *Ibid.*

In *Jackson v. Leighton*, 168 F.3d 903 (6th Cir. 1999), we dealt with a similar claim brought by a physician who alleged retaliation after he made critical comments about a plan to appoint another physician as director of a joint-replacement center. The plaintiff in *Jackson* opposed the proposed appointment because it "would jeopardize [his] department" by taking up valuable office space and diminish office morale by permitting the outside physician to "jump over valuable members of [in-house] faculty." *Id.* at 907. We held that, because the plaintiff's criticisms merely "involved internal office politics," his comments could "hardly be considered important to members of society," and that therefore his speech was not constitutionally protected. *Id.* at 911.

Naghtin's petition in the instant case resembles the speech at issue in *Barnes*, *Brown*, and *Jackson*. Even though Naghtin's petition refers to "the long term good of the Fire District, Fire Department, and its tax payers," the thrust of his petition involves a request to reinstate Donald Roesler, whose removal from his post as Captain of the Department reeks of precisely the same "internal office politics" that we have consistently found to be outside the scope of First Amendment protection. The very argument that Naghtin raises on appeal—that "morale[] is a matter of public concern," Appellant's Br. at 24—is one that we found inadequate in *Jackson*, and that we find just as inadequate here. Nor do Naghtin's allegations of an improper demotion suggest that corruption is afoot in Montague. The mere fact that Donald Roesler was dismissed as a result of an "intra-family dispute [that] had disrupted the formerly smooth operation of the fire deparment," *id.* at 23, although regrettable, can hardly be called a matter of such public

importance that Naghtin's petition for Donald's reinstatement merits First Amendment protection.

Naghtin raises three arguments that he contends distinguish his case from our precedent. None of them are persuasive. First, he argues that, unlike our past cases, his petition involved the employment of others rather than just himself. While his alleged distinction finds some basis in our case law, it remains unpersuasive. In *Brown*, the authors of the disputed letter were members of the very emergency unit that they claimed was underappreciated and undersupported. *Brown*, 867 F.2d at 319–20. In *Jackson*, the plaintiff was a physician who felt his department would be threatened by the decision to give an important directorship to an outside hire. Although Naghtin is a member of the Montague Fire Department, he argues that his petition did not pertain to an issue of *his own* employment. Rather, he contends that he was protesting what he believed to be the improper dismissal of a fellow employee—one who he felt possessed "invaluable assets" that could not be provided by another member of the Department. Although Naghtin's motive "is a relevant, but not necessarily dispositive factor" when considering whether his speech touches upon a matter of public concern, *Jackson*, 168 F.3d at 911 (quoting *Chappel v. Montgomery County Fire Protection Dist. No. 1*, 131 F.3d 564, 576 (6th Cir. 1997)), we hold that his alleged altruism is insufficient to transform his petition into constitutionally protected speech. Naghtin was a member of the unit previously commanded by Donald Roesler, and he stood to benefit from his reinstatement just as the plaintiffs in *Brown* and *Jackson* stood to benefit from their urged course of action. As such, his first argument is insufficient to persuade us to depart from this circuit's established case law.

Second, Naghtin claims (and the district court did not substantively address) that Donald Roesler's demotion took place in the context of a larger dispute over the improper construction

of a new fire house. *See supra* Part I.A. Naghtin claims that, when viewed in this context, his petition to reinstate Donald addresses a matter of public concern because it implicitly references the underlying issue of whether the fire house was constructed according to code. *See* Appellant's Br. at 24. To Naghtin's credit, this was not an argument that he invented on appeal; his original complaint makes several references to the firehouse dispute. Nonetheless, we find it to be something of a stretch to construe Naghtin's petition, which he titled "Re: Reinstatement of Donald Roesler II," to be *actually* addressing the construction of a new firehouse, especially when that issue is not mentioned anywhere in the document. To permit Naghtin to do so here would allow a flood of First Amendment retaliation claims to proceed on post-hoc rationalizations that were not apparently relevant in the disputed speech at issue when first made. This is obviously problematic for our First Amendment doctrine.

Lastly, Naghtin raises an interesting analogy to our decision in *Stinebaugh v. City of Wapakoneta*, 630 F. App'x 522 (6th Cir. 2015). There, a member of the Wapakoneta Fire Department was disciplined after he contacted several local council members to complain about a proposed plan to purchase a new fire engine twenty-five years before department practice called for an existing engine to be replaced. We held that because the decision to purchase a new fire engine constituted a significant expenditure of taxpayer money, and because the plaintiff "spoke to three council members to *give them a citizen taxpayer's perspective* on the fire department's plan," *id.* at 527 (emphasis added), the plaintiff spoke upon a matter of public concern. Here, Naghtin analogizes the decision to demote Donald Roesler to the plan in *Stinebaugh* to purchase a new fire engine. Because his petition specifically references Donald's irreplaceable training and the impact that his reinstatement would have upon "the long term good of . . . [the] tax payers," Naghtin argues that his speech should be similarly protected. Although

Naghtin's argument is creative—that we should treat a government-employer's labor investments just as we do its capital investments—he cannot point to a Sixth Circuit case that stands for this principle, and we decline to extend *Stinebaugh* in such a way today. To do so would permit a "quintessential employee beef" to rise to the level of constitutionally protected speech merely because the speaker invokes the taxpayer and the public fisc. *See Barnes*, 848 F.2d at 735. So long as we are tasked to avoid "constitutionaliz[ing] the employee grievance," *Connick*, 461 U.S. at 154, Naghtin's urged distinction is one that we cannot allow.

Thus, we conclude that Naghtin's petition is not speech that touches upon a matter of public concern sufficient to merit First Amendment protection. As such, we need not reach the alternative *Pickering*-balancing and qualified-immunity grounds that the district court referenced in its decision.

### III

Naghtin's plight is a sympathetic one. He is nonetheless not entitled to relief from this court for the same primary reason identified by the district court: his petition did not address a matter of public concern. Therefore, we AFFIRM the decision of the district court to award summary judgment to the defendants.